IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

i2i OPTIQUE LLC,

       Plaintiff,

   v.

VALLEY FORGE INSURANCE
COMPANY d/b/a CNA,

       Defendant.

Case No.: 2:20-cv-03360

**JURY TRIAL DEMANDED**

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS

**TIMONEY KNOX, LLP**
   ROBERT M. RUNYON, III, ESQUIRE
   DANIEL J. GROSSMAN, ESQUIRE
400 MARYLAND DRIVE
FORT WASHINGTON, PA 19043
215-646-6000
215-646-0379 (fax)
rrunyon@timoneyknox.com
mmalamud@timoneyknox.com

## TABLE OF CONTENTS

**Page**

SUMMARY.................................................................................................................. 1

STATEMENT OF FACTS ........................................................................................... 3

A. The Court May Consider Documents Beyond the Complaint ............................... 3

B. The Parties ........................................................................................................... 3

C. The Stay-at-Home Orders and Plaintiff's Alleged Business Losses .................... 3

D. The Policy ............................................................................................................. 5

E. Plaintiff's Claim and This Lawsuit ...................................................................... 8

ARGUMENT ............................................................................................................... 8

A. Plaintiff Is Required to Make More Than Mere Conclusory Allegations to State
A Valid Claim ...................................................................................................... 8

B. The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses............... 9

   1. The Court Should Dismiss Plaintiff's Business Income and Extra Expense Claim ........ 10

      a. Plaintiff's Allegations Do Not Demonstrate Direct Physical Loss Of Or Damage to
      Property ...................................................................................................... 11

      b. Plaintiff Does Not Allege a Period of Restoration.................................... 17

      c. Plaintiff Does Not Allege That Property Damage Caused Its Suspension ................ 18

   2. The Court Should Dismiss Plaintiff's Civil Authority Claim Because
   Plaintiff Did Not Allege Direct Physical Loss of or Damage to Another
   Property and the Orders Did Not Prohibit Access to Plaintiff's Premises ................ 19

C. Because Plaintiff Has Not Alleged a Claim Within the Policy's Grant of
Coverage, the Alleged Inapplicability of a Virus Exclusion Is Irrelevant........................ 23

CONCLUSION............................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases**

*10E, LLC* v. *Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04418-SVW-AS,
2020 WL 5359653 (C.D. Cal. Sept. 2, 2020)……………....... ………………………………2, 15, 16

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331 (S.D.N.Y. 2004)……22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………………8, 9

*Aztar Corp. v. U.S. Fire. Ins. Co.*, 224 P.3d 960 (Ariz. App. 2010)………………………………...10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *aff'd* 804 F.3d 1090 (10th Cir. 2015)………....8

*City of Pittsburg v. West Penn Power Co*, 147 F.3d 256 (3d Cir. 1998)…………………………….3

*Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685
(3d Cir. 1989)………………………………………………………………………………………...9

*Connelly v. Lane Const. Corp.*, 809 F.3d 780  (3d Cir. 2016)…………………...…………………..9

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011)……………………...20

*Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-cv-461-DAE,
2020 U.S. Dist. LEXIS 147276 (W.D. Tex.  Aug. 13, 2020)…. ……………………2, 14, 16, 24

*First American Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107 (Ariz. 2008)………...10

*Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, No. 20-258-CB
(Mich. Cir. Ct. July 21, 2020)……………………………………………………………….....13, 14, 16

*Gould Inc. v. Continental Cas. Co.*, 822 F. Supp. 1172 (E.D. Pa. 1993)…………………………...9

*Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (Pa. 1964)……………………………..9

*Harbor Ins. Co. v. U.S.A.A.*, 559 P.2d 178 (Ariz. App. 1976)……………………………………10

*Huber v. Taylor*, 469 F.3d 67 (3d Cir. 2006)……………………………………………………...9

*In re Egalet Corp. Secs. Litig.*, 340 F.Supp. 3d 479 (E.D. Pa. Aug. 2, 2018)…………………… 3

*K.C. Hopps Ltd. v. Cincinnati Ins. Co.*, Case No. 20-cv-00437-SRB
(W.D. Mo. Aug. 12, 2020)…………………………………………………………………………16

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins.*

*Co. of Hartford*, No. 06-770-C, 2007 U.S. Dist. LEXIS 64849 (M.D. La. Aug. 29, 2007)........22

*Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43 (Ct. App. 2000).....................10, 23

*Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)...................................9

*Lawrence v. Beneficial Fire & Cas. Ins. Co.*, 444 P.2d 446 (Ariz. App. 1968)......................9

*Malaube, LLC v. Greenwich Ins. Co.*, No. 1:20-cv-22615-KMW,
2020 U.S. Dist. LEXIS 156027 (S.D. Fla.  Aug. 26, 2020)...................................2, 15, 16

*Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CV-23362-KMM, 2018 U.S. Dist. LEXIS 201852
(S.D. Fla. June 11, 2018), *aff'd* 20020 U.S. App. LEXIS 26103 (11th Cir. 2020........................17

*Manor Care, Inc. v. Cont'l Ins. Co.*, 2003 U.S. Dist. LEXIS 20202 (E.D. Pa. Oct. 27, 2003)......9

*Martinez v. Allied Ins. Co. of Am.*, 2020 U.S. Dist. LEXIS 165140 (M.D. Fl. Sept. 2, 2020) ...24

*Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed App'x 823 (3d Cir. 2005) .................................11

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323
(S.D.N.Y. 2014)...............................................................................................12

*Nichols v. State Farm Fire & Cas. Co.*, 857 P.2d 406 (Ariz. App. 1993).............................9

*On Air Entertainment Corp. v. National Indem. Co.*, 210 F.3d 146 (3d Cir. 2000)...................9

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, Case No. 20-CV-907-CAB-BLM
(S.D. Cal. Sept. 11, 2020)...........................................................................15, 21, 22

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005).....................13

*Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005)...................11, 22

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) ................11

*Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B
(D.C. Super. Ct. Aug. 6, 2020)......................................................................14, 16

*Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1 (N.Y. App. Div. 2002)...........12, 18

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004)...............................21

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 U.S. Dist. LEXIS 11460
(S.D. Tex. Feb. 15, 2008).................................................................................. 20

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014)...............................................................3

*Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311
(S.D.N.Y. May 14, 2020).............................................................................16

*Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127 (Ariz. 1982)....................................10

*Studio 417 v. Cincinnati Ins. Co.*, Case No. 20-cv-03127-SRB
(W.D. Mo. Aug. 12, 2020)...........................................................................16

*Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94–0756 FMS, 1995 U.S. Dist. LEXIS 3771
(N.D. Cal. Mar. 21, 1995)............................................................................22

*The Inns By The Sea v. California Mut. Ins. Co.*, Superior Court of California,
Monterey County, Case No. 20CV001274 (Aug. 4, 2020).........................................16, 20

*Turek Ents, Inc.* v. *State Farm Mut. Auto Ins. Co.*, No. 20-11655,
2020 U.S. Dist. LEXIS 161198 (E.D. Mich. Sept. 3, 2020)......................................15, 16

*United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343
(S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006)............................................18, 20

*Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012)..................17

*White Mountain Communities Hosp. Inc.* v. *Hartford Cas. Ins. Co.*, No. 3:13-cv-8194,
2015 U.S. Dist. LEXIS 50900, (D. Ariz. Apr. 17, 2015).............................................12

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)...................................................................... 1, 3, 8, 25

**Additional Authorities**

*CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces, Workplaces,
Businesses, Schools, and Homes*, https://www.cdc.gov/coronavirus/2019-
ncov/community/reopen-guidance.html .................................................................... 17

Encyclopedia Britannica, *Types of Microorganisms, available at*
https://www.britannica.com/science/microbiology/Types-of-microorganisms...........................24

Physical, *Black's Law Dictionary* (11th ed. 2019) ...................................................... 11

Russ, L.R. and Segalla T.F., 10A Couch on Ins § 148:52, 148:46 (3d ed. 2020)............. 10, 13, 23

Restatement (Second) of Conflicts § 193................................................................9

iv

Vaccines & Immunizations: Glossary, U.S. Centers for Disease Control and Prevention,
*available at* https://www.cdc.gov/vaccines/terms/glossary.html....................................................24

1554526-1

Defendant Valley Forge Insurance Company ("Valley Forge") respectfully moves to dismiss with prejudice all claims in Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As described in more detail below, Plaintiff's allegations fail to state a valid claim based upon the plain language of the policy under which Plaintiff seeks coverage, and the Court should dismiss the Complaint with prejudice.

## SUMMARY

This is an insurance coverage dispute arising out of the COVID-19 pandemic. Plaintiff, an owner and operator of an optical goods store located in Scottsdale, Arizona, alleges that its property insurance policy with Valley Forge provides coverage for Plaintiff's purported business income losses arising from an alleged business interruption caused by COVID-19 and associated local and state stay-at-home orders mandating social distancing and limiting activities at non-essential businesses.

Although recent events have disrupted businesses around the world, including Plaintiff's retail store, the unambiguous policy terms do not provide coverage because Plaintiff does not allege that its losses were caused by any "direct physical loss of or damage to" the insured premises, that government stay-at-home orders were due to physical damage to property at other locations, or that the orders completely prohibited access to the insured premises.

*First*, Plaintiff's claims for Business Income and Extra Expense coverage fail because the Complaint contains no well-pleaded allegations suggesting that Plaintiff sustained a "direct physical loss of or damage to" property at the insured premises, which is required by the policy's plain language. While Plaintiff offers a few conclusory assertions about the presence of COVID-19 in and around its store and its store's "susceptibility" to contamination, these are insufficient to sustain a claim. *See* Complaint, ¶¶ 18, 60, 63. In fact, Plaintiff readily admits that its claims do

1

not arise from "direct physical loss of or damage to" covered property, but rather, were caused by orders entered by Arizona's governor and the Arizona Department of Health, which allegedly prohibited Plaintiff from accessing and using its store. *See* Complaint, ¶¶ 35–39. But courts around the country have roundly rejected such "loss of use" claims due to government health orders in response to the COVID-19 pandemic. *See, e.g.*, *10E, LLC v. Travelers Indemnity Co. of Conn.*, C.D. Ca., No. 2:20-cv-04418-SVWAS, p. 7 (C.D. Cal. Sept. 2, 2020), Amended Order attached as Ex. H; *Malaube, LLC v. Greenwich Ins. Co.*, No. 1:20-cv-22615-KMW, 2020 U.S. Dist. LEXIS 156027, *1 (S.D. Fla. Aug. 26, 2020); *Diesel Barbershop, LLC* v. *State Farm Lloyds*, No. 20-cv-461-DAE, 2020 U.S. Dist. LEXIS 147276, *5, *7 (W.D. Tex. Aug. 13, 2020). Plaintiff's failure to plausibly allege direct physical loss or damage is therefore fatal to its Business Income and Extra Expense claims.

*Second*, Plaintiff's Civil Authority claim fails because the Complaint does not plead the necessary prerequisites for coverage: (a) that the civil authority order was issued due to direct physical loss or damage to property at another location; and (b) that an action of a civil authority (*i.e.*, a government agency) prohibited access to Plaintiff's covered location. The civil authority orders were, by their own terms, were not issued because of any direct physical loss of or damage to property. Instead, the orders were issued to prevent the person-to-person transmission of the virus. Further, the stay-at-home orders identified by Plaintiff did not completely prohibit access to Plaintiff's premises, but rather, limited in-person transactions.

Because Plaintiff does not state a viable claim against Valley Forge based on the express language of the Policy, and as no future evidence can change this conclusion, the Complaint should be dismissed with prejudice.

2

## STATEMENT OF FACTS

### A.   The Court May Consider Documents Beyond the Complaint

Although courts typically may not look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion, courts may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) undisputed authentic documents integral to or explicitly relied upon the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). When deciding a motion to dismiss under 12(b)(6), a Court may take judicial notice of public records outside of the four corners of a complaint, including letters of government agencies and reports of administrative bodies, without converting the 12(b)(6) motion into one for summary judgment. *See In re Egalet Corp. Secs. Litig.*, 340 F. Supp. 3d 479, 496 (E.D. Pa. Aug. 2, 2018); *City of Pittsburg v. West Penn Power Co*, 147 F.3d 256, 259 (3d Cir. 1998).

Valley Forge requests that the Court consider and take judicial notice of the Valley Forge policy (the "Policy"), the Declarations of which were attached to the Complaint as Exhibit 1. A true and correct certified copy of the Policy is attached to this Motion as Exhibit A. Valley Forge also requests that the Court consider and take judicial notice of the state and local stay-at-home orders identified in the Complaint which are attached to this Motion as Exhibits B-F.

### B.   The Parties

Plaintiff is the owner and operator of a retail optical store in Scottsdale, Arizona. *See* Complaint, ¶ 9. Valley Forge is a Pennsylvania insurance company that writes, sells, and issues insurance policies, including in Arizona and Pennsylvania.

### C.   The Stay-at-Home Orders and Plaintiff's Alleged Business Losses

Plaintiff alleges it suffered a loss of business income due to COVID-19 and the resulting orders issued by state and local governments related to COVID-19. *Id.* at ¶ 72. Between March

3

11, 2020, and April 29, 2020, Arizona Governor Doug Ducey issued several orders to address the public health emergency caused by COVID-19 (the "Orders"). *Id.* at ¶¶ 50-53. Among other things, all non-essential businesses in Arizona were ordered to cease in-person, on-site transactions. *See* March 30, 2020 Order of Governor Ducey. The March 30, 2020 Order of Governor Ducey allowed the physical locations of non-essential businesses to operate as follows:

> Non-essential businesses may continue to operate those activities that do not require in-person, on-site transactions and are encouraged to maintain at least minimum basic operations that maintain the value of the business' inventory, preserve the condition of the business' physical plant and equipment, ensure security, process payroll and employee benefits, facilitate employees of the business being able to continue to work remotely from their residences, and related functions to include mail pickup.

*Id.*

The Complaint relies on the following orders:

- March 11, 2020 order from Arizona Governor Douglas Ducey declaring a public health emergency. *See* Complaint, ¶ 50; Order attached as Ex. B.

- March 19, 2020 order from Governor Ducey limiting operations of certain businesses. *Id.* at ¶ 51; Order attached as Ex. C.

- March 19, 2020 order from Governor Ducey limiting elective surgeries in Arizona. *Id.*; Order attached as Ex. D.

- March 30, 2020 order from Governor Ducey mandating that non-essential businesses cease in-person activities. *Id.* at ¶ 52; Order attached as Ex. E.

- April 29, 2020 order from Governor Ducey allowing non-essential businesses to reopen. *Id.* at ¶ 53; Order attached as Ex. F.

Plaintiff alleges that as a result of these Orders, "Plaintiff and its building was required to suspend and shut its business to customers as of March 17, 2020." Complaint, ¶ 59. Plaintiff further alleges that its insured premises was *at risk* of contamination by COVID-19. *Id.* at ¶¶ 60–64. Plaintiff also alleges in conclusory fashion that COVID-19 was a "persistent presence . . . in and around" its premises, without specifying when or where any such virus allegedly was located

4

or identified. *Id.* at ¶ 18.  However, Plaintiff's claims stem from the closure of its business due to these Orders.  *See id.* at ¶ 36 ("Plaintiff's losses were caused by the entry of Civil Authority Order . . . to mitigate the spread of COVID-19"); *id.* at ¶ 59 ("As a result of the Orders referenced herein, Plaintiff and its building was required to suspend and shut its business to customers as of March 17, 2020.").

**D.     The Policy**

The Policy provides coverage for the period of August 31, 2019 through August 31, 2020. *See* Policy, Ex. A at p. 6.[1]  The Policy's Schedule of Locations identifies a single location: 8300 E. Hayden Rd., #B-112, Scottsdale, Arizona 85258.

The Policy provides both property and liability coverage.  Plaintiff's Complaint is based upon the property coverage, which is set forth in the Businessowners Special Property Coverage Form (Form SB-146801-1) and its incorporated Declarations, Endorsements, and Exclusions.  *See* Ex. A.  Plaintiff's complaint focuses largely on the Civil Authority provision, but also requests coverage under the Business Income and Extra Expense forms.  *See* Complaint, ¶ 76.

Business Income coverage, as set forth in the Business Income and Extra Expense Endorsement, allows Plaintiff to recover lost business income caused by the necessary suspension of Plaintiff's operations resulting from a "direct physical loss of or damage to property" at the described premises:

> **1.  Business Income**
>
> * * * * *
>
> **b.**  We will pay for actual loss of Business Income you sustain due to the necessary suspension of "operations" during the "period of restoration."

---

[1] For ease of reference, page numbers have been added to the upper right-hand corner of the Policy. Using those page numbers, the motion will refer to the Policy by the form "Policy, Ex. A at xx."

> The "suspension" must be caused by direct physical loss of or damage
> to property at the described premises.

Policy, Ex. A at 36. "[S]uspension" means the "a. partial or complete cessation of your [the insured's] business activities; or, b. that a part or all of the described premises is rendered untenable." *Id.* at 20. "[O]perations" means "the type of your business activities occurring at the described premises and tenantability of the described premises." *Id.* at 19.

Extra Expense coverage allows an insured to recover reasonable and necessary expenses incurred during the "period of restoration" that would not have been incurred if there had been no direct physical loss of or damage to the insured's property from a covered cause of loss:

> **2. Extra Expense**
>
> * * * * *
>
> **a.** Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.
>
> **b.** We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> > (1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations;
> >
> > or
> >
> > (2) Minimize the "suspension" of business if you cannot continue "operations."

*Id.* at 37. For purposes of Plaintiff's claim, the "period of restoration":

> **20. "Period of restoration"** means the period of time that:
>
> > a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
> >
> > b. Ends on the earlier of:

6

    (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    (2) The date when the business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any law that:

    (a) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (b) Regulates the prevention, control, repair, clean-up or restoration of the environmental damage.

The expiration date of this policy will not cut short the "period of restoration."

*Id.* at 31-32. "Covered Cause of Loss" means "RISKS OF DIRECT PHYSICAL LOSS" unless excluded or limited by the Policy. *Id.* at 2–3.

       Finally, Civil Authority coverage allows recovery of lost Business Income and Extra Expense when a civil authority—*i.e.*, a government entity—prohibits access to an insured's property because of "direct physical loss of or damage to" property at locations *other than* the described premises:

**Civil Authority**

    **1.** When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by an action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

*Id.* at 62. For example, Civil Authority coverage would apply if a government entity prohibited access to an insured's covered property as the result of fire damage at the building next door.

E.     **Plaintiff's Claim and This Lawsuit.**

Plaintiff originally brought suit against Valley Forge in the U.S. District Court for the District of Arizona on June 25, 2020. On July 7, 2020, Plaintiff voluntarily dismissed the Arizona action and, two days later, filed the instant Complaint. The Complaint seeks various declarations from this Court, including that Valley Forge suffered a covered loss under the Policy. *See* Complaint, Prayer for Relief. Plaintiff asserts that it is entitled to coverage under the Business Income, Extra Expense, and Civil Authority policy forms. *See id.* at ¶¶ 15–16. Plaintiff alleges that it suffered covered losses as a result of government orders, issued in response to the COVID-19 pandemic, that limited its operations. *See id.* at ¶¶ 36, 59. Plaintiff also includes conclusory allegations that COVID-19 was present on its property, but perhaps in recognition of their hollowness, Plaintiff specifically requests that the Court not consider whether the virus was physically present at its place of business. *See* Complaint, ¶¶ 18, 80. For the reasons that follow, Plaintiff fails to state a viable claim against Valley Forge and the Complaint should be dismissed with prejudice.

## ARGUMENT

A.     <u>**Plaintiff Is Required to Make More Than Mere Conclusory Allegations to State a Valid Claim**</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and factual allegations "must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a

8

complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (describing three step process for applying *Twombly* and *Iqbal*).

For purposes of this motion, Valley Forge treats as true the well-pleaded allegations of the Complaint and the facts in documents incorporated by reference or integral to Plaintiff's claims. Even taking Plaintiff's factual and non-conclusory allegations as true, however, the unambiguous terms of the Policy do not permit recovery, and the Court should dismiss the Complaint in its entirety, with prejudice.

**B.    The Policy Does Not Provide Coverage for Plaintiff's Alleged Losses**

Under Arizona law, an insurance policy must be read as a whole. *Lawrence v. Beneficial Fire & Cas. Ins. Co.*, 444 P.2d 446 (Ariz. App. 1968); *Nichols v. State Farm Fire & Cas. Co.*, 857 P.2d 406 (Ariz. App. 1993).[2]  Provisions of insurance policies are to be construed in a manner

---

[2] It is well established that a district court in a diversity action will apply the choice of law rules of the forum state in determining which state's law will be applied to the substantive issues before it. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Huber v. Taylor*, 469 F.3d 67, 73 (3d Cir. 2006).  If there is no difference in the laws of the relevant states, then the court should avoid the choice of law question and may refer interchangeably to the applicable laws of the two states. *On Air Entertainment Corp. v. National Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000).  Pennsylvania uses a "flexible approach" to the choice of law issues "which combines a relationship and interest analysis." *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 688 (3d Cir. 1989) (citing *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (Pa. 1964)); *Gould Inc. v. Continental Cas. Co.*, 822 F. Supp. 1172, 1175 (E.D. Pa. 1993) (holding Pennsylvania's choice-of-law rules require the court to "perform a governmental interest analysis along with the significant relationships approach set forth in the Restatements (Second) of Conflicts of Laws").  A dispute concerning the parties rights under an insurance policy is governed by the law of the state that the parties understood was to be the principal location of the insured risk during the term if the policy, unless another state has a more significant relationship to the transaction and the parties. *See Manor Care, Inc. v. Cont'l Ins. Co.*, 2003 U.S. Dist. LEXIS 20202 (E.D. Pa. Oct. 27, 2003) (citing Restatement (Second) of Conflicts § 193).

9

according to their plain and ordinary meaning." *Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982). In interpreting a policy, the language should be viewed from the standpoint of the average layman who is untrained in the law of insurance. *Id.*; *see also Aztar Corp. v. U.S. Fire. Ins. Co.*, 224 P.3d 960 (Ariz. App. 2010). When an insurance policy's meaning and intent are clear and unambiguous, a court should not rewrite the contract to avoid harsh results. *Harbor Ins. Co. v. U.S.A.A.*, 559 P.2d 178 (Ariz. App. 1976). Importantly, ambiguous language is not construed against the insurance company in the first instance, but rather, if policy language appears ambiguous, it should be interpreted by looking to legislative goals, social policy, and the transaction as a whole. *First American Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107 (Ariz. 2008).

As a general matter, it is the policyholder's burden to demonstrate the existence of a loss within a policy's affirmative grant of coverage. *See* 10A Couch on Ins. § 148:52 (3d ed. 2020); *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46 (Ct. App. 2000) ("the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion").

1. **The Court Should Dismiss Plaintiff's Business Income and Extra Expense Claims**

Plaintiff does not assert a claim that falls within the Policy's coverage under the Business Income and Extra Expense Endorsement. The plain language of the Policy provides that Valley Forge will pay for lost business income sustained only as a result of the necessary "suspension" of

---

Valley Forge issued the Policy to Plaintiff in Arizona, through an Arizona broker, and the insured Property is located in Arizona. The Policy also includes Arizona changes/endorsements. Therefore, Arizona law is controlling.

10

operations "caused by *direct physical loss of or damage to property* at the [insured] premises."

Policy, Ex. A at 36 (emphasis added).  Because the Complaint does not plausibly allege that

property at the described premises suffered any direct physical loss or damage, Plaintiff has failed

to plead facts that satisfy the threshold trigger for coverage.

a.   **Plaintiff's Allegations Do Not Demonstrate Direct Physical Loss Of Or Damage To Covered Property As Required By The Policy**

The Policy expressly and unambiguously provides that Business Income and Extra

Expense losses are covered only if those losses result from physical loss or damage.  The plain,

ordinary meaning of the word "physical," is that the loss or damage at issue must be "tangible" or

"material."  *See, e.g.* Physical, Black's Law Dictionary (11th ed. 2019) (defining "physical" as

"[o]f, relating to, or involving material things; pertaining to real, tangible objects").  While there

is no Arizona case law interpreting the term "direct physical loss of or damage to property" as

presented in the Policy, the law from other circuits, including this Circuit, is instructive.  For

example, as the U.S. Court of Appeals for the Third Circuit explained:

> In ordinary parlance and widely accepted definition, physical damage to
> property means "a distinct, demonstrable, and physical alteration" of its
> structure. Fire, water, smoke and impact from another object are typical
> examples of physical damage from an outside source that may demonstrably
> alter the components of a building and trigger coverage.

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (applying

New Jersey law) (internal citations omitted); *see Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed

App'x 823 (3d Cir. 2005) (applying Pennsylvania law);[3] *see also Phila. Parking Auth. v. Fed. Ins.*

---

[3] Both *Port Authority* and *Hardinger* support Valley Forge's right to dismissal.  While the Third
Circuit acknowledges in those cases that in limited circumstances actual contamination of insured
property may constitute direct physical loss or damage, such that the presence of even microscopic
particles like asbestos or *E. coli* can constitute physical loss or damage when those particles
eliminate the functionality of a premises and render it totally uninhabitable, Plaintiff has failed to
plausibly allege that the virus was even present on the property, much less that the property was

*Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005) (finding that the term "physical loss or damage" is not ambiguous, does not include purely economic damages, and "requires that the claimed loss or damage must be physical in nature") (applying Pennsylvania law); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (direct physical loss of or damage to property "unambiguously[] requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage" and the language "direct physical loss or damage" should not "be read . . . to extend to mere loss of use of a premises, where there has been no physical damage to such premises"); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (N.Y. App. Div. 2002) (concluding that policy insuring against business interruption losses as a "direct and sole result of loss of, damage to or destruction of property or facilities" "clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage").

This precedent is consistent with Arizona law, which provides that only business losses that are fairly traceable to *physical* damage are eligible for coverage under a business income provision. *See White Mountain Communities Hosp. Inc.* v. *Hartford Cas. Ins. Co.*, No. 3:13-cv-8194, 2015 U.S. Dist. LEXIS 50900, at *11-12 (D. Ariz. Apr. 17, 2015) ("The Business Income Coverage provision does not cover all income losses caused by the fire; rather, it covers only those income losses resulting from actual physical damage to the facility caused by fire."). Business losses caused by "the economic conditions in the area," and not by the effect of any "physical damage" or "physical[ ] dysfunction[ ]," are ineligible for coverage. *Id.*

---

physically damaged by the virus. *See, e.g., Port Authority*, 311 F.3d at 236; *Hardinger*, 131 Fed App'x at 826.

Therefore, mere loss of use, which is what Plaintiff complains of here (Complaint, ¶ 35), is insufficient to trigger coverage under policy language requiring direct physical loss of or damage to property. As a leading treatise on insurance law explains, the "requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a *distinct, demonstrable, physical alteration of the property.*" 10A Couch on Ins. § 148:46 (3d ed. 2020) (emphasis added). To hold otherwise would mean that direct physical loss or damage is established any time an insured cannot fully utilize an insured property for every possible intended purpose, rendering the language superfluous. *See Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) ("Once physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss, particularly a business interruption loss. But [the insured's] argument, if adopted, would mean that direct physical loss or damage is established whenever property cannot be used for its intended purpose.").

This requirement of tangible, physical damage as a trigger to coverage for COVID-19 restrictions was recently confirmed by numerous courts, which rejected "loss of use" business interruption claims similar to Plaintiff's claim in the instant matter. In *Gavrilides Management. Co. v. Michigan Insurance. Co.*, a Michigan court dismissed the plaintiff's business interruption claim for alleged losses caused by the COVID-19 pandemic for failure to allege direct physical loss of or damage to its property. Ex. G, *Gavrilides* Order at 3. The *Gavrilides* plaintiff's claim was premised on state orders that purportedly restricted activities at plaintiff's restaurant and caused plaintiff to reduce its operations. The court summarily rejected plaintiff's argument that it experienced a "physical loss" of property because customers were prohibited from dining in at its

13

restaurant, which remained open for take-out and delivery service.  Tr. of Oral Argument on Mot. for Summ. Disposition ("*Gavrilides* Tr.") at 20, *Gavrilides Mgmt. Co. v. Mich. Ins. Co.*, Case No. 20-258-CB-C30, (Mich. Cir. Ct. July 1, 2020), attached as Ex. 1 to Grossman Affidavit (Ex. I). Calling the argument "nonsense," the court concluded that plaintiff's allegations came "nowhere close to meeting the requirement that . . . there has to be some physical alteration to or physical damage or tangible damage to the integrity" of the property to trigger coverage.  *Id.*

A District of Columbia court subsequently adopted a similar position in *Rose's 1, LLC v. Erie Ins. Exchange*, concluding that "a natural reading of the term 'direct physical loss'" requires that any claimed loss be caused by "a direct physical intrusion on to the insured property" and result in "some form of direct physical change." 2020 D.C. Super. LEXIS 10 at *13.  Because the plaintiffs in *Rose's* 1 failed to show that "COVID-19 was actually present on their insured properties at the time they were forced to close" and/or that the relevant D.C. orders caused direct physical loss, the court dismissed plaintiffs' claims. *Id.* at *6, 13.

A court in the Western District of Texas further substantiated this conclusion, holding that a policy requiring "direct physical loss to Covered Property" demands a "distinct, demonstrable physical alteration of the property."  *Diesel Barbershop*, 2020 U.S. Dist. LEXIS at *16.  In considering the barbershop plaintiffs' claims for income loss resulting from state and local orders prompted by COVID-19, the court acknowledged that some courts have found direct physical loss despite lack of physical damage, but found that "the line of cases requiring tangible injury to property are more persuasive here and that the other cases are distinguishable." *Id.* at *5 (noting, for example, that "COVID-19 does not produce a noxious odor that makes a business uninhabitable").  Holding that the loss needs to have been a "distinct, demonstrable physical

1554526-1

alteration of the property," the court concluded that the plaintiffs failed to plead a direct physical loss and dismissed the case. *Id.*

The U.S. District Court for the Central District of California similarly confirmed that a physical alteration was required to trigger coverage under the insurance policy. *See* Ex. H,. *10E, LLC* order at 7. The court held that "losses from inability to use property do not amount to direct physical loss of or damage to property within the ordinary and popular meaning of that phrase," since physical loss or damage "occurs only when property undergoes a distinct, demonstrable, physical alteration." *Id.* The U.S. District Court for the Southern District of California adopted this reasoning and also held that mere loss of use does not constitute "physical loss of or damage to" property. *See Pappy's Barber Shops*, 2020 U.S. Dist. LEXIS 166808 at *12-13. As the court explained, "Plaintiff only plausibly alleges that [the government orders'] restrictions interfered with the use or value of its property – not that the restrictions caused direct physical loss or damage." *Id.* (quoting *10E LLC*, at p. 7).

A magistrate judge in the Southern District of Florida similarly concluded that a restaurant's business interruption claim, based on state and local closure orders prohibiting onsite dining at restaurants, should be dismissed. *See Malaube*, 2020 U.S. Dist. LEXIS 156027, at *1. The plaintiff had argued that the closure orders caused a "direct physical loss" by forcing the plaintiff to close the indoor dining section of its restaurant, thus rendering the business unable to "operate for its intended purpose." *Id.* at *5. The court rejected this argument because the plaintiff failed to allege that COVID-19 was physically present on the premises or to otherwise allege any direct physical loss or damage. *Id.* at *7; *see also Turek Ents, Inc.* v. *State Farm Mut. Auto Ins. Co.*, No. 20-11655, 2020 U.S. Dist. LEXIS 161198 at *7–8 (E.D. Mich. Sept. 3, 2020) (dismissing with prejudice coverage claims based on COVID-19 because "'accidental direct physical loss to

15

Covered Property' is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property"); *The Inns By The Sea* v. *California Mut. Ins. Co.*, Superior Court of California, Monterey County, Case No. 20CV001274 (Aug. 4, 2020) (granting an insurance carrier's demurrer in a COVID-19 case, dismissing the plaintiff's entire complaint without leave to amend for failure to state facts sufficient to constitute a cause of action), Order attached as Ex. 2 to Grossman Affidavit (Ex. I).[4]

Even if the coronavirus was actually present on Plaintiff's premises, Plaintiff's allegations are still insufficient to plead physical loss or damage.  The presence of COVID-19 on a premises does not constitute physical loss or damage. *See* Prelim. Inj, Hr'g. Tr. at 4–6, *Soc. Life Magazine, Inc.* v. *Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (S.D.N.Y. May 14, 2020) (denying preliminary injunction and indicating insured could not establish coverage because the virus, even if present, could not cause requisite physical damage), Transcript attached as Ex. 3 to Grossman Affidavit (Ex. I).  According to CDC guidelines, "[c]oronaviruses on surfaces and objects naturally die within hours to days" and can be removed with "[n]ormal routine cleaning with soap and water"

---

[4] The weight of decisions to date hold that COVID-19 does not cause physical loss of or damage to property.  However, one judge finding against the same insurer in two concurrent cases concluded that COVID-19 could plausibly cause physical loss sufficient to trigger business interruption coverage. *See Studio 417, Inc.* v. *Cincinnati Ins. Co.*, Case No. 20-cv-03127, 2020 U.S. Dist. LEXIS 147600 (W.D. Mo. Aug. 12, 2020); *see also* Order Denying Def. Cincinnati Ins. Co.'s Mot. to Dismiss, *K.C. Hopps Ltd.* v. *Cincinnati Ins. Co.*, Case No. 20-cv-00437, ECF No. 29 (W.D. Mo. Aug. 12, 2020).  In addition to being outlier decisions contrary to the weight of authority, these opinions moreover included an important caveat: the court made clear that it was making no determination on the *merits* of whether coronavirus or COVID-19 caused, or could cause, physical loss or damage.  Instead, the Court "emphasize[d] that Plaintiffs have merely pled enough facts to proceed with discovery" and "that all rulings herein are subject to further review following discovery." *Studio 417*, 2020 U.S. Dist. LEXIS 147600, at *24.  Instead, Plaintiff's allegations suffer from the same defects as in *Gavrilides*, *Rose's 1*, *Diesel Barbershop*, *Malaube*, *Turek,* and *10E*.  The relevant stay-at-home orders and limitation on Plaintiff's operations are not physical alterations to or tangible, physical damages to the integrity of Plaintiff's property, as required by the Policy.

16

or killed with disinfectants. *CDC Reopening Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools, and Homes*, cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html); *see also* Complaint, ¶ 60 ("Plaintiff regularly cleaned and sanitized its facility" to "eradicate any Coronavirus that was present in the facility."). The fleeting presence of a virus that can survive on surfaces for only a few hours or days, and can be easily removed through ordinary cleaning or disinfectants, is not physical loss of or damage to property. *See Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CV-23362-KMM, 2018 U.S. Dist. LEXIS 201852, at *15 (S.D. Fla. June 11, 2018) ("The fact that the [premises] needed to be cleaned more frequently does not mean Plaintiff suffered a direct physical loss or damage."), *aff'd* 20020 U.S. App. LEXIS 26103 (11ᵗʰ Cir. 2020); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (cleaning expenses "are not tangible, physical losses, but economic losses"). Plaintiff has not included any non-conclusory allegations as to the presence of COVID-19 on its premises, and has included no specificity as to the length of time it was present or the manner in which it was identified. Nevertheless, even if its conclusory allegations were taken as true, the fleeting presence of a virus that can be removed with routine cleaning cannot constitute "direct physical loss of or damage to" property. Because Plaintiff does not—and cannot—allege facts sufficient to show it has suffered "direct physical loss of or damage to property at the described premises," Policy, Ex. A at 36, its claims for coverage under the Business Income and Extra Expense Endorsement should be dismissed with prejudice.

    **b.**    **Plaintiff Does Not Allege a Period of Restoration**.

    That the Policy requires tangible physical loss or damage to trigger coverage finds further support in the fact that the Policy allows recovery of lost business income and extra expense only for the "period of restoration." Policy, Ex. A at 36. The period of restoration "[b]egins with the

date of *direct physical loss or damage*" and ends on the earlier of the "date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality; or [t]he date when business is resumed at a new permanent location." *Id.* at 18-19 (emphasis added). The Policy's restriction of coverage to the period for repair, rebuilding, or replacement of property "support[s] the requirement of physical damage" to trigger coverage and demonstrates that, without that direct physical loss or damage trigger, there is no coverage. *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005) (determining policy language limiting coverage to "the length of time [needed] to rebuild, repair or replace such part of the Insured Location(s) as has been damaged or destroyed" supports a "requirement of physical damage" (alteration in original)), *aff'd* 439 F.3d 128 (2d Cir. 2006); *see also Roundabout Theatre Co.*, 302 A.D.2d at 1, 7–9 (similar language shows policy "clearly and unambiguously" provides coverage only for "direct physical damage").

In sum, Plaintiff fails to adequately allege that the virus was present at the insured locations, and also fails to sufficiently plead any physical loss or damage to its premises requiring repair, rebuilding, or replacement of the property. Without such allegations, Plaintiff cannot show a "period of restoration," nor can it show that any repairs were necessitated by any supposed property damage. As a result, Plaintiff's claims under the Business Income and Extra Expense Endorsement should be dismissed.

      **c.**    <u>Plaintiff Does Not Allege That Property Damage Caused Its Suspension of Operations</u>

Even if Plaintiff's complaint could be construed as alleging physical loss of or damage to property, it does not satisfy the additional requirement that the suspension of Plaintiff's operations resulted from that damage, which is also fatal to Plaintiff's claims. *See United Air Lines, Inc. v. Ins. Co. of the State of Pa.*, 439 F.3d 128 (2d Cir. 2006). In other words, Plaintiff does not allege

18

that it ceased operations due to any physical loss or damage to property at its premises. To the

contrary, Plaintiff alleges the following:

> The virus and bacterium exclusions do not apply because Plaintiff's losses were not solely caused by a virus, bacterium or other microorganism. Instead, ***Plaintiff's losses were caused by the entry of Civil Authority Order, particularly those by Governor Ducey and by the Arizona Department of Health, to mitigate the spread of Covid-19.*** The Civil Authority Order was issued because the damage to individuals and property caused by COVID-19.

Complaint, ¶ 36 (emphasis added). Plaintiff attempts to explain the physical impact of the virus

by explaining only the impact of the civil authorities orders themselves. This circular reasoning

fails to allege physical loss of or damage to the insured property, and fails to allege that Plaintiff

suspended operations *because* of such physical loss or damage at its own premises. Plaintiff's

claims under the Business Income and Extra Expense Endorsement should therefore be dismissed.

### 2. The Court Should Dismiss Plaintiff's Civil Authority Claim Because Plaintiff Did Not Allege Direct Physical Loss of or Damage to Another Property and the Orders Did Not Prohibit Access to Plaintiff's Premises

Plaintiff also cannot recover under the Civil Authority Endorsement of the Policy because

the orders were not issued due to direct physical loss of or damage to property other than Plaintiff's

premises and such orders did not *prohibit* access to Plaintiff's premises. Policy, Ex. A at 62

(allowing recovery for lost business income "caused by action of civil authority that prohibits

access to the described premises" only when that civil authority action is "due to direct physical

loss of or damage to property at locations, other than described premises, caused by or resulting

from a Covered Cause of Loss"). Accordingly, Plaintiff's allegations are insufficient to state a

claim for coverage under the Policy's Civil Authority Endorsement for at least two reasons.

*First*, as a threshold matter, Plaintiff does not allege facts demonstrating that any of the

Orders were issued "due to direct physical loss of or damage to property" at locations other than

Plaintiff's insured premises. Policy, Ex. A at 62. Plaintiff's unsupported allegation that the orders

19

1554526-1

were issued with an awareness of property damage, *see* Complaint, ¶ 56, is insufficient.   None of the Orders identify any specific property that sustained physical loss or damage.   Instead, the Orders were issued to prevent the person-to-person spread of COVID-19. Complaint, ¶¶ 52–54; *see generally* Exs. B–F.   To the extent the Orders were intended to prevent future property damage—rather than to address prior property damage—they are insufficient to give rise to a civil authority claim. *See United Air Lines, Inc.*, 439 F.3d at 134–35 (finding no civil authority coverage when order was "based on fears of future attacks," not prior physical damage); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (requiring "proof of a causal link between prior damage and civil authority action"); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 U.S. Dist. LEXIS 11460, at \*31 (S.D. Tex. Feb. 15, 2008) ("When . . . the only relevance of prior damage to other property in deciding whether to issue a civil authority order . . . is to provide a basis for fearing future damage . . . the causal link between the prior damage and the civil authority order is missing.").

In *The Inns By The Sea*, Judge Villarreal articulated the distinction between preventative orders and orders due to property damage:

> When the Governor ordered us all to shelter in place and businesses to close, it wasn't necessarily because there was COVID at your hotels.  It was because there was a fear that COVID might arrive at your hotels and there was a fear by having people move around the state, that that would cause us all to infect each other.

*See* Tr. Of Oral Argument, *The Inns By The Sea* v. *California Mut. Ins. Co.*, Superior Court of California, Monterey County, Case No. 20CV001274 (Aug. 4, 2020); attached as Ex. 4 to Grossman Affidavit. Judge Villareal later dismissed Plaintiff's complaint without leave to amend. *The Inns By The Sea* Order, Ex. 2 to Grossman Affidavit (Ex. I).

Plaintiff has failed to allege facts sufficient to show that any of the Orders were due to any direct physical loss of or damage to property at locations other than Plaintiff's insured premises. Rather, the language of the governmental orders at issue here makes clear that they were preventive in nature, designed to prevent the future person-to-person spread of COVID-19. *See, e.g.*, Ex. E at 2 (March 30, 2020 Executive Order was issued "to combat COVID-19 . . . by further limiting potential exposure through a policy of physical distancing while maintaining social connectedness").

*Second*, for a civil authority claim to succeed, access to the covered premises must be "prohibit[ed]," which unambiguously means a complete bar to entry. *See* Policy, Ex. A at 62; *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140–41 (10th Cir. 2004) (defining "prohibit" to mean "formally forbid, esp. by authority" or "prevent" (quoting Oxford American Dictionary and Language Guide 795 (1999)) and citing cases from various states). As the District Court for the Southern District of California explained, interpreting similar policy language: "civil authority coverage [is only available] to the extent that access to Plaintiff's [*sic*] physical premises is prohibited, and not if Plaintiff's [*sic*] are simply prohibited from operating their business." *Pappy's Barber Shops*, 2020 U.S. Dist. LEXIS 166808 at *15. In that case, government orders issued in response to COVID-19 were alleged to have "prohibited [Plaintiffs] from operating their business at their premises." *Id.* Nevertheless, while these orders may "prohibit the operation of Plaintiff's business; they do not prohibit *access* to Plaintiffs' place of business." *Id.* (emphasis added).

The orders referenced in Plaintiff's complaint did not bar access to Plaintiff's premises. Instead, they imposed a stay-at-home order and physical distancing which resulted in the suspension of in-person, on-site retail sales. *See, e.g.* Ex. E (March 30, 2020 order mandated social

21

distancing in order to "mitigate COVID-19 transmission").  Plaintiff has not identified an order

directing it to suspend all business operations (as opposed to limiting the scope of business

activities and the physical presence of patrons within its retail store) or prohibiting access to its

premises.  Instead, the Governor's Order states:

> Non-essential business may continue to operate those
> activities that do not require in-person, on-site transactions
> and are encouraged to maintain at least minimum basic
> operations that maintain the value of the business' inventory,
> preserve the condition of the business' physical plant and
> equipment, ensure security, process payroll and employee
> benefits, facilitate the ability of employees to work remotely
> from their residences, and related functions to include mail
> pickup.

*Id.* at ¶ 12.  The orders permitted non-essential businesses to continue to operate, in modified form,

and permitted on-site presence to perform minimum basic operations.  Therefore, they did not

impose a complete bar to access of Plaintiff's premises.  *See Pappy's Barber Shops*, 2020 U.S.

Dist. LEXIS 166808 at *15; *see also Kean, Miller, Hawthorne, D'Armond McCowan & Jarman,*

*LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 U.S. Dist. LEXIS 64849 (M.D. La.

Aug. 29, 2007) (claim failed when plaintiff closed its office to comply with advisories

recommending that residents remain home after hurricane despite no orders forbidding or blocking

access to premises); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (denying civil

authority coverage to airport parking facility when FAA order grounded all airplanes because the

order "did not 'prohibit[] access to' [the insured's] garages" even though it "temporarily obviated

the need for" its services); *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d

331, 333–36 (S.D.N.Y. 2004) (finding civil authority provision was applicable only to the four

days access to the insured's premises was completely prohibited by order, despite traffic

restrictions in the area after the no-access order was lifted); *Syufy Enters. v. Home Ins. Co. of Ind.,*

22

No. 94–0756 FMS, 1995 U.S. Dist. LEXIS 3771 (N.D. Cal. Mar. 21, 1995) (denying civil authority coverage when insured opted to close its theaters due to city-wide curfews because theater access was never specifically foreclosed by the order).

Because Plaintiff does not allege facts sufficient to show that the Orders (1) were issued due to the direct physical loss of or damage to property at locations other than its premises, or (2) prohibited access to Plaintiff's premises, Plaintiff has failed to state a claim for relief under the Policy's Civil Authority coverage.

**C.     Because Plaintiff Has Not Alleged a Claim Within the Policy's Grant of Coverage, the Alleged Inapplicability of a Virus Exclusion is Irrelevant.**

The Complaint alleges that the "Policy does not specifically exclude the losses suffered by the Plaintiff, and therefore, the Policy does provide coverage for the losses incurred by the Plaintiff." Complaint, ¶ 35.   This allegation follows a series of averments related to a virus exclusion purportedly implemented by the Insurance Services Office ("ISO"), which is not part of Plaintiff's Policy and is irrelevant to the issues in this litigation.  *See* Complaint, ¶¶ 22–28. Nonetheless, it is the insured's burden to show that the alleged loss falls within the policy's grant of coverage before exclusions even become relevant.  *See* 10A Couch on Ins. § 148:52 (3d ed. 2020); *Keggi*, 199 Ariz. at 46 ("the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion").  Plaintiff cannot carry that burden here because, as shown above, the trigger for coverage is "direct physical loss of or damage to" the insured's premises (for the Business Income and Extra Expense coverage) or other premises (for Civil Authority coverage).  *See, supra*, Parts B.1–B.2.  In short, the Plaintiff must meet these essential requirements to trigger coverage before there is any consideration of potentially applicable exclusions.

23

Nonetheless, even if Plaintiffs *had* sufficiently alleged physical damage (which they have not), the Policy does in fact *exclude* losses caused by virus contamination.  *First,* the Policy excludes "loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of . . . 'microbes.'"  Policy, Ex. A at p. 99.  "Microbes" are defined as "any non-fungal micro-organism or non-fungal, colony-form organism *that causes infection or disease*."  *Id.* at 104 (emphasis added).  Because the Policy expressly excludes loss or damage caused by a non-fungal micro-organism, such as a virus, "that causes infection or disease," coverage is excluded under the Policy, even if Plaintiffs' claim could otherwise meet the physical loss or damage trigger.[5]  *See Martinez* v. *Allied Ins. Co. of Am.*, No. 2:20-cv-00401-JLB-NPM, 2020 U.S. Dist. LEXIS 165140, at *1-2 (M.D. Fla. Sept. 2, 2020) (virus exclusion barred recovery for COVID-19 business losses); *Diesel Barbershop*, 2020 U.S. Dist. LEXIS 147276, at *20 (same).

*Second*, the Policy contains an exclusion for losses caused by "[c]ontamination by other than 'pollutants,'" which encompasses loss or damage caused by viruses since they are not "pollutants" under the Policy's definition.  Policy, Ex. A at p. 99.[6]  But the Court need not address the scope of these or other applicable exclusions on this motion because Plaintiff has failed to allege a loss that falls within any grant of coverage under the Policy.

---

[5] *See* Vaccines & Immunizations: Glossary, U.S. Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/vaccines/terms/glossary.html, last visited July 24, 2020 ("microbes" are "[t]iny organisms (*including viruses* and bacteria) that can only be seen with a microscope") (emphasis added). *See also* Encyclopedia Britannica, *Types of Microorganisms, available at* https://www.britannica.com/science/microbiology/Types-of-microorganisms, last visited July 24, 2020 (viruses are a type of microorganism).

[6] The exclusions relating to microbes and contamination are not exhaustive, and other exclusions in the Policy bar coverage for Plaintiff's claims.  For example, the Policy contains exclusions for consequential loss, such as loss of use, delay, or loss of market.  See Policy, Ex. A at 19.

## CONCLUSION

For all of the reasons stated above, Plaintiff has failed to state a claim upon which relief may be granted.   Therefore, Valley Forge respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

**TIMONEY KNOX, LLP**

BY:   _____s/Robert M. Runyon III_____
ROBERT M. RUNYON, III, ESQUIRE
PA ID: 80417
DANIEL J. GROSSMAN, ESQUIRE
PA ID: 321328
400 MARYLAND DRIVE
FORT WASHINGTON, PA 19043
215-646-6000
215-646-0379 (fax)
rrunyon@timoneyknox.com
dgrossman@timoneyknox.com

ATTORNEYS FOR DEFENDANT VALLEY
FORGE INSURANCE COMPANY

Dated: September 15, 2020

25