# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| i2i OPTIQUE LLC,<br><br>   **Plaintiff,**<br><br> v.<br><br>**VALLEY FORGE INSURANCE COMPANY d/b/a CNA,**<br><br>   **Defendant.** | Case No.: 2:20-cv-03360 |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

### ORAL ARGUMENT REQUESTED

| | |
|---|---|
| Richard M. Golomb, Esq.<br>Kenneth J. Grunfeld, Esq.<br>**GOLOMB & HONIK, P.C.**<br>1835 Market Street, Suite 2900<br>Philadelphia, PA 19103<br>Telephone: (215) 985-9177<br>Facsimile: (215) 985-4169<br>rgolomb@golombhonik.com<br>kgrunfeld@golombhonik.com | Arnold Levin, Esq.<br>Laurence Berman, Esq.<br>Frederick Longer, Esq.<br>Daniel Levin, Esq.<br>**LEVIN SEDRAN & BERMAN LLP**<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3697<br>Telephone: (215) 592-1500<br>Facsimile: (215) 592-4663<br>alevin@lfsblaw.com<br>flonger@lfsblaw.com<br>dlevin@lfsblaw.com |
| W. Daniel "Dee" Miles, III<br>Rachel N. Boyd<br>Paul W. Evans<br>**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**<br>P.O. Box 4160<br>Montgomery, AL 36103<br>Telephone: (334) 269-2343<br>Facsimile: (334) 954-7555<br>dee.miles@beasleyallen.com<br>rachel.boyd@beasleyallen.com<br>paul.evans@beasleyallen.com | Dated: July 27, 2020<br><br><br>*Counsel for Plaintiff* |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................2

      A.      COVID-19 Hits the United States and Arizona .................................2

      B.      Impact on i2i Optique LLC ...............................................................3

      C.      Valley Forge Fire Insurance Company Policy and its Current Dispute with Plaintiff ...............................................................4

III.    APPLICABLE LEGAL STANDARDS .............................................................5

      A.      Standard for Motion to Dismiss in an Insurance Contract Case .................5

IV.     ARGUMENT ......................................................................................................9

      A.      Plaintiff has Suffered Physical Loss of or Damage to its Property and Nearby Property ...............................................................9

      B.      The Civil Authority Orders were Issued as a Result of Damage to Property ...............................................................17

      C.      Plaintiff's Claims Are Not Excluded by the Policy ...........................22

            1.      The Virus Exclusion Does Not Apply to Civil Authority Coverage ...............................................................22

                  a)      Denying Coverage Under the Virus Exclusion Would Be Contrary to the Reasonable Expectations of the Parties.........23

                  b)      Plaintiff's Regulatory Estoppel Argument Requires Further Discovery ...............................................................26

                  c)      The Parties Require Discovery to Ascertain the Scope and Validity of the Virus Exclusion ...............................................................28

      D.      Issues Raised in Defendant's Motion Are Not Ripe ...........................29

      E.      Declaratory Judgment Would Be Proper ...........................................30

V.      CONCLUSION ...............................................................................................31

# **TABLE OF AUTHORITIES**

**Page(s)**

*Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.*,
  2000 WL 726789 (D. Ariz. April 18, 2000) ............................................................ 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 5, 6

*Betz v. Erie Ins. Exch.*, 957 A.2d 1244 (2008).............................................................. 9

*Bishops, Inc. v. Penn Nat. Ins.*, 984 A.2d 982, 989 (Pa. Super. 2009)…………………………..24

*Bokman v. Sentinel Ins. Co. Ltd.,* No: 2:20-cv-02887 (E.D. Pa.)………………………………..30

*Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270 (Pa. Super. 1998)............................... 9

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ...................................... 6

*Chafin v. Chafin,* 133 S. Ct. 1017 (2013) ..................................................................... 8

*Century Sur. Co. v. Casino W., Inc.,* 677 F.3d 903, 909 (9th Cir. 2012)…………………………..23

*Collister v. Nationwide Life Ins. Co.,* 388 A.2d 1346, 1353 (Pa. 1978)…………………………24

*Colony Ins. Co. v. Zena Assocs., LLC,* 2012 WL 12897100 (E.D. Pa. Dec. 17, 2012) ................. 7

*Colorcon, Inc. v. Lewis*, 792 F. Supp. 2d 786 (E.D. Pa. 2011)....................................... 8

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................................ 6

*Cook v. Allstate Ins. Co.*, No. 48D02-0611-PL-01156 (Indiana Super. 2007)…………………..13

*Davis v. Wells Fargo,* 824 F.3d 333 (3d Cir. 2016)........................................................ 6

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011)………………..20, 21

*Diesel Barbershop, LLC v. State Farm Lloyds*,
  2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) ...................................................... 12

*Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191 (N.D. 1998).............................. 13

*Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009) ............................ 12

*Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332 (Or. 1993) ......................... 12

*Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153 (3d Cir. 2014) ........................... 6

*Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*, 119 F. Supp. 2d 552 (E.D.N.C. 2000) .... 10

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ............................................................ 6

*Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020) ................................................. 17, 22

*Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742 (3d Cir. 1999) .............................. 7

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct., Ingham) .......11, 23

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist
    Congregational Church*, 887 F.2d 228 (9th Cir. 1989) ............................................................ 7

*General Mills, Inc. v. Gold Medal Insurance Co.*, 622 N.W. 2d 147 (Minn. Ct. App. 2001) ...... 14

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
    2014 WL 6675934 (D.N.J. Nov. 25, 2014) ............................................................................ 12

*Hughes v. Potomac Ins. Co. of D.C.,* 1999 Cal. App. 2d 239 (Ct. App. 1962) ............................9

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ......................................................................... 5

*Kunji Harrisburg, LLC v. Axis Surplus Ins. Co.*, 2020 WL 1469905 (E.D. Pa. Mar. 18, 2020) .... 7

*Larkin v. Geico Gen. Ins. Co.*, 2015 WL 667515 (E.D. Pa. Feb. 13, 2015) ................................ 7

*MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1214 (Cal. 2003) ...................................25

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100 (Pa. 1999) .......................... 7,2

*Martinez v. Allied,* 2:20-cv-00401-FtM-66NPM (M.D. Fla. Sept. 2, 2020) ..........................12

*Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52 (1995) ................................................. 7

*Matzner v. Seaco Ins. Co.,* 9 Mass. L. Rprt. 41 (Mass. Super. 1998) ................................12

*Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*,
    218 F. Supp. 3d 1034, 1038 (D. Neb. 2016) .......................................................................26

*Miller v. Boston Ins. Co.,* 218 A.2d 275 (1966) ......................................................................... 7

*Mogck v. Unum Life Ins. Co. of Am.,* 292 F.3d 1025, 1028 (9th Cir. 2002) ..........................24

*Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*, 629 A.2d 831, 848 (N.J. 1993) ...............27, 29

*Motorists Mutual Ins. Co. v. Hardinger,* 131 Fed. Appx. 823 (3d Cir. 2005) ........................... 12

*Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W.Va. 1998) ........................................ 13

*Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*,
    2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) ................................................................ 10,20

*Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, 433 F. Supp. 3d 747 (W.D. Pa. 2020) ........... 6

*One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520,
   2015 WL 2226202 (N.D. Ill. April 22, 2015) .................................................................. 13

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*,
   976 F.2d 1037, 1043 (7th Cir. 1992)……………………………………………………………23

*In re Estate of Pouser*, 975 P.2d 704, 709 (Ariz. 1999)……………………………………………28

*Sciolla v. W. Bend Mut. Ins. Co.,* 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013)……………………24

*Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.,* 64 F.3d 1991 (6th Cir. 1995).............. 9

*Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296 (Minn. Ct. App. 1997)......... 12

*Shahid v. Borough of Darby*, 666 Fed.Appx. 221 (3d Cir. 2016)................................................. 6

*S. Hosp., Inc. v. Zurich Am. Ins. Co.,* 393 F.3d 1137, 1141 (10th Cir. 2004)……………………21

*Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
   2016 WL 3267247 (D. Or. June 7, 2016) ..................................................................... 13, 14

*Social Life Magazine Inc. v. Sentinel Ins. Co. Ltd.,* No. 20-cv-3311 (S.D.N.Y.). ……………11

*Spector v. Fireman's Fund Ins. Co.,* 451 F. App'x 130 (3d Cir. 2011) ........................................ 7

*Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Connecticut*,
   2007 WL 464715 (D. Or. Feb. 7, 2007)....................................................................... 13

*State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133-35 (3d Cir. 2000)……………………30

*Studio 417, Inc., et al. v.  The Cincinnati Insurance Company*,
   2020 WL 4692385 (W.D. Mo. Aug. 12, 2020)................................................................. 14, 18

*Sullivan v. Std. Fire Ins. Co.*, 2008 WL 361141 (Del. Feb. 11, 2008) ........................................ 12

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189 (Pa. 2001)…………………………...27, 29

*Sun Co. v. Pa. Tpk. Comm'n,* 708 A.2d 875 (Pa. Commw. 1998)  ................................................. 8

*Swarner v. Mut. Ben. Grp.,* 72 A.3d 641, 645 (Pa. Super. 2013)……………………………24, 28

*Syufy Enterprises v. Home Ins. Co. of Indiana*,
   No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995)…………………………20-21

*Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993)…………………..28

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
   2018 WL 3829767 (C.D. Cal. July 11, 2018)........................................................................ 10

*TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D.Va. 2010) ................................................. 12

*United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006)......................21

*Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company, Ltd.*,
　No. 6:20-cv-01174 (M.D.Fla. Sept. 24, 2020)..............................................................25

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*,
　712 F.3d 165 (3d Cir. 2013)............................................................................................. 6

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724 (N.J. App. 2009) ................ 13

*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011) ..................................................... 6

*Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) ......................... 12

## Rules

FED. R. CIV. P. 11(b) ...................................................................................................................... 17

Fed. R. Civ. P. 8(a)(2)....................................................................................................................... 6

FED. R. CIV. P. 12(b)(6) ............................................................................................................. 5, 6

## Other Authorities

Restatement (Second) of Contracts § 206...................................................................................... 8

## I.      INTRODUCTION

i2i Optique LLC ("i2i" or "Plaintiff") is an optical goods store located in Scottsdale, Arizona that had a thriving business prior to the onset of the Coronavirus pandemic.  When the pandemic hit the nation, including Arizona and the Scottsdale area specifically, government officials acted in an effort to control the pandemic and the spread of the virus.  In Arizona, the Governor issued orders that required retail businesses to close.  The initial orders required the complete shutdown of businesses, while subsequent orders permitted limited services.[1]

i2i was required to abide by these orders and did so.  However, in anticipation that one day such a closure might occur causing i2i to suffer business interruption, business income and extended expense losses, i2i had purchased an ***ALL RISK*** business interruption policy from the Defendant Valley Forge Insurance Company d/b/a CNA ("Valley Forge") to help it weather any potential financial storm caused by a forced closure.

i2i is one of thousands of businesses around the country that have similarly been forced to close operations because of the pandemic and suffer losses.  The situation has permeated the economy and been the subject of much national scientific and political debate.  In the litigation world, a request was been made to the federal court system to create a multidistrict litigation proceeding to manage the cases.  Also, as noted in the Declaration of Richard M. Golomb, Esquire (co-counsel for Plaintiff here, and attached as Exhibit 1 hereto), a number of different types of approaches are being considered to handle the financial consequences of businesses suffering interruption and losses.  *Id.* at ¶ 10 (including discussing "Black Swan" approach by Chubb Insurance).

---

[1] A more fulsome discussion of the Civil Authority Orders is set forth *infra* at Section VI.B.

But against this backdrop of uncertainty in the country, Valley Forge asserts that it owes Plaintiff no benefits under its All Risk policy.  This, despite Plaintiff having paid valuable premium payments to Valley Forge to protect itself against the very types of losses sustained and intended to be covered by an All Risk policy.  Valley Forge wrongly asserts the following bases to support its Motion to Dismiss:

1. The First Amended Complaint ("FAC") does not allege physical loss of or damage to plaintiff's property or nearby property caused by a Covered Cause of Loss;

2. The Policy's Civil Authority coverage does not apply because the Civil Authority Orders did not prohibit access to the insured premises but were issued to prevent the future spread of Coronavirus (COVID-19), not because of damage to property; and

3. The Virus Exclusion in the insurance policy (the "Policy") with Plaintiff bars coverage for Plaintiff's losses.

*See* Motion to Dismiss, D.E. # 9-1.  Rather than provide benefits to Plaintiff for losses as to which Valley Forge received valuable premiums, the Defendant instead seeks to foreclose such coverage through litigation based on invalid policy interpretations.

As discussed herein, the Motion should be denied outright, or at the minimum, a decision on the motion should be stayed pending an opportunity for Plaintiff to take discovery in this matter to address the many factual issues that the Motion raises, regardless of Defendant's effort to describe the issues as presenting pure questions of law. What is at issue here is more than just an abstract interpretation of the policy. The words of the policy are capable of different interpretations, and the interpretation of the policy necessarily requires discovery for it to occur accurately. The issues presented here are a hybrid of legal *and* factual questions, yet there is no factual record to inform the Court on how to interpret the Policy.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     COVID-19 Hits the United States and Arizona

In and around January 2020, the United States began to see its first cases of COVID-19.

As the pandemic worsened and spread across the nation, federal, state and local authorities took action to address the pandemic and provide for the safety and welfare of the public.  In Arizona, where i2i is located, the Governor and other local officials acted.  Accordingly, on March 11, 2020, Arizona Governor Doug Ducey issued a Public Health Emergency, a formal recognition of an emergency situation in the State due to the pandemic.  *See* FAC ¶ 50 and Civil Authority Order. Shortly thereafter, on March 30, 2020, Governor Ducey issued a more restrictive order that required all non-life-sustaining businesses in the State to cease operations and close all physical locations.  FAC ¶ 52.  Shortly thereafter, businesses were subjected to closure orders issued by the State of Arizona, all of which explicitly prohibited non-essential businesses from allowing patrons access to their premises.  *See* FAC and Civil Authority Orders.

The status of the closures has not been stagnant because the Coronavirus and the pandemic itself have not been stable.  To the contrary, there have been flares and surges of cases, requiring governmental authorities to modify and re-issue orders to address the fluid situation for the safety of the public.

### B.      Impact on i2i Optique LLC

i2i owns and operates an optical goods store.  FAC ¶ 9. Due to the government closure orders detailed above, Plaintiff was forced to suspend operation of its physical location and prohibit patrons from accessing the business beginning on March 17, 2020 and continuing until August 1, 2020.  FAC ¶ 59.  Thus, starting on March 17, 2020, Plaintiff lost the functionality and utility of its business.  FAC ¶ 60.  Understandably, Plaintiff suffered immense business income losses resulting from the government-issued mandatory closure orders.  FAC ¶ 72.

There can be no dispute here that Plaintiff has alleged that it suffered business income loss, business interruption and extended business expenses, all of which are the types of losses covered

by Defendant's insurance Policy issued to Plaintiff, and these facts are well pleaded in the FAC and must be accepted as true for purposes of this Motion.

### C.   Valley Forge Fire Insurance Company Policy and its Current Dispute with Plaintiff

Prior to the mandatory closure orders, Plaintiff purchased from Defendant a commercial insurance policy with Policy Number 6025313905 issued for the period of August 31, 2019 to August 31, 2020 (hereinafter "Policy"), which provides coverage to Plaintiff for losses sustained due to the necessary suspension of its operations. Defendant's Exhibit A.  Plaintiff, who had no part in the drafting of the Policy language, purchased the Policy and paid substantial premiums to Defendant with the reasonable expectation that Defendant would provide for business income loss, extra expense, and civil authority coverage. *Id*.  There is no dispute that the Policy is in full force and effect.

Relevant to the pending motion, the Policy contains a provision known in the insurance industry as Civil Authority Coverage.  *See* Defendant's Exhibit A part 2 p. 2.  Specifically, the Civil Authority provision of Plaintiff's Policy reads:

> [Y]ou may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be due to direct physical loss of or damage to the property. . . caused by or resulting from a Covered Cause of loss.

*Id.*  Put simply, in the event of a mandatory closure by order of government where access to the premises is prohibited, as is the case here, Defendant is to provide coverage for Plaintiff's business income losses.

Plaintiff's Policy also contains an "Fungi/mold/mildew/yeast/microbe exclusion" endorsement, which purports to exclude coverage for "'bodily injury' or 'property damage' arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion

4

of, contract with, exposure to, existence of, or growth or presence of any 'fungi' or 'microbe.'" *See* Defendant's Exhibit A part 2 p. 38.  However, as detailed *infra* Section IV.B and C, such an exclusion is immaterial to the present claims as Plaintiff's losses are the result of the government-issued mandatory closure orders, that were precipitated by the occurrence of the Pandemic and ubiquitous virus, causing physical impact within communities.   Further, there is a dispute as to whether the Virus Exclusion even pertains to a Pandemic and principles of whether regulatory estoppel preclude Defendant's reliance on the Virus Exclusion to deny coverage.[2]

Due to the mandated closure orders issued by the State of Arizona, Plaintiff commenced the present action on July 2, 2020 seeking a declaration that it is entitled to coverage under the Civil Authority provision of its Policy issued by Defendant.  Defendant filed the present Motion to Dismiss the First Amended Complaint on September 15, 2020.

## III.    APPLICABLE LEGAL STANDARDS

### A.    Standard for Motion to Dismiss in an Insurance Contract Case

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

---

[2] In other cases pending before this Court where the defendants in those cases did not file a motion to dismiss but instead filed Answers, policyholders have served discovery on a third party, ISO, to obtain information about the development of the Virus Exclusion language that appears in standard form in many policies.  *See* Exhibit 1 at ¶ 8. This discovery, along with discovery from Defendant here on the same issue, is critical for the Court to rule here, since the heavy reliance that Defendant places on the Virus Exclusion language very well may be totally misplaced. *Id.* Discovery has been served on various defendants who did not file motions to dismiss to develop a record not only relating to the Virus Exclusion clause, but also as to other matters raised by such defendants, as how they determined premiums for this coverage, what their underwriting protocols were, and other factors that would bear on whether the Policy was intended to not provide coverage under the circumstances presented here. Plaintiff here has such discovery to be filed upon the Court denying this Motion, or at the minimum, staying this Motion while discovery takes place.

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corpmad. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556), but it "'requires showing more than a sheer possibility that a defendant has acted unlawfully.'" *Shahid v. Borough of Darby*, 666 Fed.Appx. 221, 222 n.1 (3d Cir. 2016) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)). In the end, the court will only grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). In essence, judgment on the pleadings cannot be granted where there is an issue of fact which would support recovery. *See Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, 433 F. Supp. 3d 747, 757 (W.D.

Pa. 2020) (citing *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church* 887 F.2d 228, 230 (9th Cir. 1989)).

In the context of pleadings related to insurance policies and interpreting insurance policies, the court must read each policy as a whole and construe its meaning according to its plain language. *Spector v. Fireman's Fund Ins. Co.,* 451 F. App'x 130, 136 (3d Cir. 2011).[3] "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999) (citation and internal quotation marks omitted). A provision is ambiguous if reasonable people could fairly ascribe differing meanings to it. *Larkin v. Geico Gen. Ins. Co.*, 2015 WL 667515, at *3 (E.D. Pa. Feb. 13, 2015) (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir. 1999)). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Madison Constr. Co.*, 735 A.2d at 105. "Ambiguity is not to be resolved in a vacuum. Contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Colony Ins. Co. v. Zena Assocs., LLC*, 2012 WL 12897100, at *2 (E.D. Pa. Dec. 17, 2012) (citing *Madison Const.*, *supra*).

Further, in an adhesion contract – a contract drafted by one party and signed by another party – it is well established that "in construing any written instrument, and particularly an insurance contract, the instrument must be strictly construed against the writer." *Kunji Harrisburg, LLC v. Axis Surplus Ins. Co.*, 2020 WL 1469905, at *3 (E.D. Pa. Mar. 18, 2020) (citing *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa 1966). *See also Mastrobuono v. Shearson Lehman Hutton*,

---

[3] Defendant asserts that the Policy should be interpreted by Arizona law. Plaintiff does not dispute this but notes that Arizona and Pennsylvania law are substantially similar with respect to the issues in this case, and cases from these and other jurisdictions are cited as persuasive authority.

514 U.S. 52, 62–63 (1995) (ambiguities are construed in favor of the non-drafting party). "Under the rule of *contra proferentem,* any ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable." *Colorcon, Inc. v. Lewis*, 792 F. Supp. 2d 786, 797 (E.D. Pa. 2011) (citing *Sun Co. v. Pa. Tpk. Comm'n,* 708 A.2d 875, 878–79 (Pa.Commw. 1998); Restatement (Second) of Contracts § 206)).

**B.      Plaintiff's Claim for Business Income Coverage is Sufficiently Pleaded**

In the business income coverage provision of the Policy, Defendant agreed to pay business income losses Plaintiff sustained due to a suspension of operations "caused by direct physical loss of or damage to property . . . caused by or result from a Covered Cause of Loss." Defendant's Exhibit A part 1 at 36. The FAC sufficiently alleges physical loss or damage to its property such that it pleads "enough fact to raise a reasonable expectation that discovery will reveal evidence" of Plaintiff's entitlement to relief under the business income provision of its policy. *Twombly*, 550 U.S. at 545. As explained in Section IV.A, *infra*, Plaintiff adequately pleaded physical loss of or damage to the Insured Property. Further, as explained in Section IV.C, *infra*, the losses Plaintiff sustained are a Covered Cause of Loss because the losses are not excluded in the Policy. Also, Defendant improperly states that "the Complaint does not plausibly allege that [Plaintiff's property] suffered any direct physical loss or damage" (MTD at 17); rather, Plaintiff merely states that it does not seek a factual determination of whether Coronavirus was present at the Insured Property because such a determination is unnecessary to the declaratory relief Plaintiff seeks. FAC at ¶ 79, Prayer for Relief.

Plaintiff's well-pleaded FAC includes numerous allegations establishing Plaintiff has suffered or is threatened with "an actual injury traceable to the defendant," which is "likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)

(citations omitted).  Stated differently, the FAC establishes Plaintiff will suffer actual injury if Defendant refuses to pay under the business income coverage provision when Plaintiff suffered business income losses caused by a Covered Cause of Loss.  Thus, Defendant's motion to dismiss should be denied as to Plaintiff's business income claim.

## IV.    ARGUMENT

### A.    Plaintiff has Suffered Physical Loss of or Damage to its Property and Nearby Property

Defendant argues that Plaintiff has not alleged any physical loss or damage to its own or nearby property merely because the FAC does not plead that the closure of the property was "caused by direct physical loss or physical damage to property." *See* MTD at 17.  Such a narrow interpretation of the "physical loss or damage" requirement is contrary to the plain, reasonable, and intended language of the Policy.  *See Hughes v. Potomac Ins. Co. of D.C.*, 1999 Cal. App. 2d 239, 248-49 (Ct. App. 1962) ("Despite the fact that a 'dwelling building' might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected.  Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner.").

Neither "direct physical loss" nor "damage" is defined in the Policy,[4] but "physical loss of" is clearly an additional, and different, basis for coverage beyond "damage to" property—and a basis which Defendant almost completely ignores.  *See Sec. Ins. Co. of Hartford v. Kevin Tucker*

---

[4] "The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." *Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa. Super. 1998).  "[A] court's focus upon the insured's 'reasonable expectations' is not limited only to situations in which the insurance contract might be deemed ambiguous . . . ." *Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1253 (Pa. Super. 2008).  "In any event, where the court finds the policy language to be ambiguous . . . determination of the parties' intent poses a question of fact . . . ." *Id.* at ¶ 11.

& *Assocs., Inc.*, 64 F.3d 1991, 2007 (6th Cir. 1995); *Total Intermodal Servs. Inc. v. Travelers Prop.*

*Cas. Co. of Am.*, No CV 17-04908 AB, 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018); *see*

*also Narricot*, 2002 WL 31247972, at *4 (recognizing that because the phrase "action of civil

authority" was not defined in the policy, the words should be construed according to their ordinary

English meaning, and any ambiguity "must be resolved in favor of the insured").  Because these

phrases are stated in the disjunctive ("or"), they are clearly separate and distinct triggers of

coverage.  *See Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*, 119 F. Supp. 2d 552, 557

(E.D.N.C. 2000).

An allegation of property damage may be a point of disagreement in a particular case.[5]

Although building and personal property could arguably become contaminated (often temporarily)

by viruses and bacteria, the nature of the property itself would have a bearing on whether there is

actual property damage. But Defendants, again raising a factual issue, stress that the physical loss

and damage underlying Plaintiff's claims are intangible.[6]

Defendant's leading argument is that various other courts concluded that "strikingly

similar" policies did not cover "such losses."  The policies and facts presented are significantly

different here and are clearly distinguishable from this case.  Defendant fails to recognize the

important difference between Plaintiff's losses and those of the parties in Defendant's cited cases.

For example, in *White Mountain Communities Hosp. Inc. v. Hartford Cas. Ins. Co.*, No. 3:13-CV-

---

[5] ISO Circular LI-CF-2006-175, New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria, ISO (July 6, 2006), https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf.

[6] Defendant cites to numerous summary judgment cases in support of its argument for dismissal, including *White Mountain*, *Port Auth.*, *Newman Myers*, *Roundabout Theatre*, *Universal Image Prods.*, and *Mama Jo's*, which affirm Plaintiff's argument that a determination of the factual issue of physical loss is properly left until after discovery. *See Studio 417, Inc., et al. v.  The Cincinnati Insurance Company*, 2020 WL 4692385 at 10 (W.D. Mo. Aug. 12, 2020) ("To be sure, and as argued by Defendant, there is case law in support of its position that physical tangible alteration is required to show a 'physical loss.' However, Plaintiff correctly responds that these cases were decided at the summary judgment stage, are factually dissimilar, and/or are not binding.").

8194 JWS, 2015 WL 1755372 (D. Ariz. Apr. 17, 2015), the plaintiff successfully obtained civil authority coverage after a fire forced local officials to evacuate the town. *Id.* at *1. The plaintiff also received property damage coverage for smoke that entered the building, requiring thorough cleaning. *Id.* at *2. However, the plaintiff did not receive business income coverage for smoke damage only because there was no evidence of actual lost business. *Id.* Defendant's argument here clearly misses the mark, and *White Mountain* actually confirms that "incorporeal" damage does trigger property damage and civil authority coverage. *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005), is also clearly inapposite as it relates to business income loss caused by the grounding of aircraft after the September 11 attacks, which caused no physical damage on the Philadelphia Parking Authority. In *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002), the court found that asbestos was only in structural components that did not pose a risk, but acknowledged that its mere presence in inhabited areas would be considered "physical loss." *Id.* at 236. *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014), involved a power outage. And *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1 (N.Y. Sup. Ct. 2002), involved a nearby construction accident, but the plaintiff's policy only covered damage to the insured property. These cases are all clearly distinguishable from the present case.

Defendants' reliance on some recent cases arising out of the COVID-19 pandemic, are also distinguishable. In Michigan, the plaintiff conceded it had no property damage. *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct., Ingham). In New York, the court was addressing a preliminary injunction motion only. *Social Life Magazine Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-cv-3311 (S.D.N.Y.). In these two cases, the courts cited state laws interpreting *physical damage* as requiring an alteration to the integrity of the property and ignoring the phrase

11

*loss*.[7]  Further, both decisions are not final; thus, this Court should not consider these rulings dispositive at this stage.  Additionally, in *Martinez v. Allied*, 2:20-cv-00401-FtM-66NPM (M.D. Fla. Sept. 2, 2020), the court found that the plaintiff did not meet the pleading standards where the plaintiff offers no opposition to the arguments asserted by the defendant and erroneously argues the defendant has failed to make its point "beyond a reasonable doubt."

Numerous courts nationwide agree that physical loss does not require structural damage, but lost operations or inability to use the business is sufficient.  *See, e.g.*, *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (finding that unpleasant odor was physical injury to property); *Motorists Mutual Ins. Co. v. Hardinger*, 131 Fed. Appx. 823, 825-27 (3d Cir. 2005) (finding that bacteria contamination of well water would constitute direct physical loss to house if it rendered it unusable); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (finding the presence of ammonia to constitute physical loss or damage because "property can sustain physical loss or damage without experiencing structural alteration").[8]  In finding coverage, courts have held that the *loss of*

---

[7] Similar analysis and holdings are found in *Turek v. State Farm*, No. 20-11655 (E.D. Mich. Sept. 3, 2020), *Rose's 1, LLC v. Erie Ins. Exchange*, No. 2020 CA 002424 B (D.C. Sup. Ct. Aug. 6, 2020) (Defendant's Exhibit G), *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020), *Malaube, LLC v. Greenwich Inc. Co.*, No. 20-22615 (S.D. Fla. Aug. 26, 2020), *10E, LLC v. Travelers Indem. Co. of Ct.*, No. 2:20-cv-044118-SVW-AS (C.D. Cal. Sept. 2, 2020), and *The Inns by the Sea v. California Mut. Ins. Co.*, No. 20CV001274 (Cal. Sup. Ct. Aug. 6, 2020).

[8] *See also TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D.Va. 2010) (finding losses due to sulfuric gas released by drywall were covered because "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces"); *Sullivan v. Std. Fire Ins. Co.*, No. 515, 2007, 2008 WL 361141 (Del. Feb. 11, 2008) (finding mold contamination constituted a physical loss, recognizing "physical" is defined as "having material existence" and mold spores and other bacteria associated with mold undoubtedly have a "material existence" even though they are not tangible or perceptible by the naked eye); *Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332, 1336 (Or. 1993) (finding cost of removing odor from methamphetamine lab constituted direct physical loss); *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968) (en banc) (finding that gasoline fumes which rendered church building unusable constitute physical loss); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) (finding asbestos in building made the use of the building dangerous and constituted physical loss of the building and recognizing "direct physical loss" may exist in the absence of structural damage to the insured property because "a building's function may be seriously impaired or destroyed and the property rendered useless by the presence of contaminants"); *Matzner v. Seaco Ins. Co.*, 9 Mass. L. Rprt. 41 (Mass. Super. 1998) (finding the phrase "direct physical loss or damage" to be ambiguous and holding carbon monoxide

*functionality* is what is covered.  *Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc.*, No. 99-185 TUC ACM, 2000 WL 726789, at *2 (D. Ariz. April 18, 2000) ("'physical damage' is not restricted to the physical destruction of harm . . . but includes *loss of access, loss of use, and loss of functionality*") (emphasis added).[9]  Further, a condition that renders property unsuitable for its intended use constitutes a direct physical loss, "even where *some utility remains*" constitutes physical loss or damage.  *See Cook v. Allstate Ins. Co.*, No. 48D02-0611-PL-01156 (Indiana Super. 2007); *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Connecticut*, No. 05-1315-JE, 2007 WL 464715 (D. Or. Feb. 7, 2007) (finding insured suffered "direct physical loss of or damage to" covered property when the property could not be used for its "ordinary expected purpose" even though the property could still be used for other income-generating purposes).  It has even been held that fear of damage can be a direct physical loss.  *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W.Va. 1998) (finding home rendered unusable by increased risk of rockslide suffered direct physical loss even in the absence of structural damage).

A federal court in *Shakespeare Festival Ass'n v. Great Am. Ins. Co.* took this analysis one step further after an open-air theater shut down because of ambient wildfire smoke and health concerns over poor air quality.  No. 1:15-CV-01932-CL, 2016 WL 3267247 (D. Or. June 7, 2016), *vacated based on a joint stipulated request by the parties,* No. 1:15-CV-019320CL (D. Or. Mar. 6, 2017).  The court noted that air was a physical thing, explaining that "certainly air is not mental

---

contamination in an apartment building was sufficient to render building uninhabitable and was a "direct, physical loss").

[9] *See also One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2015 WL 2226202, at *9 (N.D. Ill. April 22, 2015) ("Where a general all-risk commercial or homeowner's policy insures against both 'loss' and 'damage' to an existing structure, 'physical' damage may take the form of loss of use of otherwise undamaged property, which in turn suffices as a covered loss."); *Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191, 194 (N.D. 1998) (finding coverage in the absence of physical alteration because the properties "no longer performed the function for which they were designed"); *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724 (N.J. App. 2009) (recognizing that since "physical" can mean more than material alteration or damage, "damage" includes loss of function or value, and "physical damage" can include the temporary loss of use due to a power interruption).

or emotional, nor is it theoretical."  Structural damage was not required for a loss and it was a stretch on the part of the insurer to impute that requirement when it was not in the policy.  *Id.*  The theater had to be cleaned, air filters were replaced repeatedly, and the air quality had to improve before business could resume.  *Id.*  The court held "[e]ven though the loss or damage was not structural or permanent, the property experienced a loss of 'essential functionality.'"  The court went on to find coverage for the loss of business income when the "smoke infiltrated the theater and rendered it "unusable for its intended purpose."

Coverage has also been found where the impairment of function occurred by operation of law.  In *General Mills, Inc. v. Gold Medal Insurance Co.*, 622 N.W. 2d 147, 150 (Minn. Ct. App. 2001), a routine inspection discovered that oats had been treated with a pesticide that was used for other food products and presented no danger to consumers, but technically was not FDA-approved for oats.  The court found coverage for the undamaged oats, holding "[w]hether or not the oats could be safely consumed, they legally could not be used in General Mills' business.  The district court did not err in finding this to be *an impairment of function and value* sufficient to support a finding of physical damage."  *Id.* at 152 (emphasis added).

Two recent decisions from the Western District of Missouri, which Defendant glosses over in a footnote, both provide support for Plaintiff's argument: *Studio 417, Inc., et al. v.   The Cincinnati Insurance Company*, No. 4:20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) and *K.C. Hopps, Ltd. v. The Cincinnati Insurance Company*, No. 4:20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020).[10]  In *Studio 417*, the plaintiff owned and operated numerous hair salons in the Springfield, Missouri, metropolitan area and sought coverage from its property insurer for business

---

[10] The Honorable Stephen R. Bough of the Western District of Missouri presided over both referenced matters. Judge Bough's Order in K.C. Hopps adopted the reasoning detailed in *Studio 417* because both matters involve the same Defendant, similar insurance provisions and similar factual allegations.

income losses incurred when its hair salons were forced to close as a result of the Coronavirus pandemic and related government closure orders.  The decisions in *Studio 417* and *K.C. Hopps* address two key issues relevant to the Motion to Dismiss before this Court.

Of note, the *Studio 417* court rejected defendant's argument that the civil authority orders at issue did not prohibit access to the premises as required by the policy.[11] In doing so, the Court reasoned that at the motion to dismiss stage plaintiff's allegations that it was required to suspend its hair salon operations and/or prohibit all indoor dining at the behest of the government closure orders were plausible allegations to trigger civil authority coverage. *Id*. at 13-14.  The Court in *Studio 417* explained that this holds true even in the case of restaurants that were required to suspend all indoor dining[12] operations, but continued to offer drive-thru, pickup, or delivery options because the Policy required a prohibition of access but did not specify "all access" or "any access."

Additionally, a key determination in *Studio 417* was what constitutes direct "physical loss" or "damage." The court denied defendant's motion to dismiss and concluded that plaintiff adequately alleged a direct "physical loss" under the Policy. The court reasoned that because the policy failed to define the key terms of "direct physical loss" and "damage" it was left to "rely on the plain and ordinary meaning of the phrase." *Id*. at 8. Using the plain meaning of "direct," "physical," and "loss," the court concluded that Plaintiff sufficiently alleged physical loss through allegations in its complaint that COVID-19 "lives on" and "is active on inert physical surfaces" resulting in Plaintiff's property being "unsafe" and "unusable". *Id*. Expounding even further, the Court, citing nationwide case law, concluded that absent a physical alteration, a physical loss still

[11] Defendant also argued that there was no "direct physical loss to property" as required by the policy to trigger civil authority coverage, which the Court rejected for the reasons detailed herein.

[12] The plaintiff in *K.C. Hopps* owns and operates several restaurants and bars in the Kansas City metropolitan area.

occurs when the property is uninhabitable or unusable for its intended purpose and to conclude otherwise would render either "physical loss" or "damage" superfluous. *Id*. at 9.

In a recent decision by the Superior Court of New Jersey, Law Division, in *Optical Services et. al v. Franklin Mutual Insurance Company*, Dkt. No. BER-L-3681-20 (Aug. 13. 2020), the trial court denied a motion to dismiss in a similar business interruption case arising out of the COVID-19 pandemic.  At oral argument, the Court disagreed with defendant's claim that business losses caused by COVID-19 did not constitute "direct physical loss," finding that it was "unsupported … by a blanket review of the policy language." Exhibit 2 at 26.  Moreover, the court also held that the plaintiff "should be permitted to engage in issue oriented discovery" and that a motion to dismiss was "premature at best." *Id*.  At a minimum, there is a split of authority on these issues, which only further supports the propriety of permitting Plaintiff to conduct discovery and develop a record to substantiate its allegations against the Defendant.

In *Blue Springs Dental Care, LLC, et al v. Owners Insurance Company*, 20-cv-00383-SRB, attached hereto as Exhibit 3, the court determined that the plaintiffs adequately stated a claim for a direct physical loss where the insurance policy failed to define the term "physical loss," and the policies do not contain an exclusion clause for "pandemics" or "communicable disease."  Further, the court determined that "[p]laintiffs plausibly allege that COVID-19 physically attached itself to their dental clinics, thereby depriving them of the possession and use of those insured properties." *Id*. at 8-9.

In its FAC, Plaintiff alleges that its insured property was at imminent and continued risk of Coronavirus contamination, if it was not contaminated already.  FAC ¶¶ 60-67.  Defendant's arguments essentially criticize Plaintiff's (and the world's) imperfect knowledge about the presence of COVID-19, but if it were knowable where the virus is, there would not likely be an

ongoing pandemic.  The nature of the pandemic is such that Plaintiff experienced physical loss as a result of the pandemic and the resulting Civil Authority Orders, regardless of an indisputable assertion that COVID-19 was present in Plaintiff's building, or anywhere, at any given time. Rather, the allegations in the FAC were based on "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances."  FED. R. CIV. P. 11(b).

As alleged in the FAC, the COVID-19 pandemic has resulted in the "widespread, omnipresent and persistent presence of COVID-19 in and around Plaintiff's Insured Property and adjacent properties."  FAC ¶ 18; *see also Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 889-90 (Pa. 2020) (affirming the Pennsylvania governor's authority to declare the entire state a "disaster area" because "COVID-19 cases have now been reported in all counties in the Commonwealth"). Plaintiff's business has been affected by the Civil Authority Orders prohibiting access to its insured property due to the clear evidence of the Coronavirus being present throughout Arizona, and the severe safety risks associated with allowing individuals to come in close contact.  FAC ¶¶ 62.

Regardless, whether Plaintiff did indeed suffer a physical loss or damage caused by a covered cause of loss is a question of fact, not a legal issue to be determined at the motion to dismiss stage.   Because Plaintiff has adequately pleaded allegations supporting coverage, Defendant's motion to dismiss is due to be denied.

### B.       The Civil Authority Orders were Issued as a Result of Damage to Property

Defendant also argues it is absolved from providing coverage under the Policy's Civil Authority provision because the Orders were issued solely to address fears of future damage, and in turn dismissal is warranted because Plaintiff fails to plead facts demonstrating that the Orders were caused by "direct physical loss of or damage to property."  However, Defendant's argument is predicated on an extremely narrow recitation of the circumstances precipitating the Orders, and a thorough review of the factual backdrop refutes these claims.  Plaintiff's FAC alleges that

17

COVID-19 caused damage to occur in and around the surrounding location of the Premises, the State of Arizona issued the Orders as a direct result of that damage, and Defendant's arguments to the contrary are inadequate to support dismissal at the pleadings stage.   Even Defendant's characterization that the Orders were issued to address *fears* itself shows there is at a minimum a factual issue about the Orders (and they fit within the scope of "Covered Cause of Loss" defined by the Policy as "Risks of Direct Physical Loss").   *See* Defendant's Exhibit A part 1 at 15.

Plaintiff is also entitled to civil authority coverage because Plaintiff has alleged in the FAC that (1) the coronavirus and COVID-19 have caused direct physical loss or damage to surrounding property near the insured property (within one mile), (2) civil authority Orders have prohibited customers from accessing the insured property, (3) access to the area immediately surrounding the insured property is likewise prohibited, (4) and the civil authority Orders were put in place to respond to the coronavirus and COVID-19 contaminating the surrounding area. *See Studio 417*, No. 20-cv-03127, at 13 ("Plaintiffs adequately allege that they suffered a physical loss, and such loss is applicable to other property.").

All four of these elements are satisfied.  First, the Orders in this case mandating the closure of businesses constitute "action[s] of a civil authority" under the terms of the Policy, and Defendant does not argue to the contrary.  Next, the Orders clearly prohibit access by barring the public from the Premises by law.  *See* FAC ¶¶ 50-73, Orders, and Section II, *supra*.  Third, Plaintiff's FAC does in fact allege that the Orders were issued in response to damage to property in and around the area of the Premises.  *Id*.  Finally, the losses caused by COVID-19 and the risk of injury constitute a covered cause of loss under the terms of the Policy.

Although Defendant argues that Plaintiff fails to allege that the Orders were issued in response to actual damage, Plaintiff indisputably alleges that at the time of the entry of the Orders,

the spread of COVID-19 was already underway and constituted losses to the area in and around the location of the Premises.  FAC ¶¶ 43; 47; 50-53.  The link between the damages and the required closure of Plaintiff's business is unmistakable and borne out by the language of the Orders, which verify that Arizona was responding to the *ongoing* and devastating damage caused by COVID-19.  *Id.* at ¶¶ 50-53.  One need only review the plain language of the Orders to understand the State of Arizona sought to effectuate a dual purpose: 1) mitigate and ultimately stop the spread of property loss *already caused* by COVID-19 and 2) prevent additional spread that may lead to future loss.  Defendant would like this Court to ignore this first goal for the purposes of its argument, but the language of the Orders makes clear that the latter goal of preventing further spread was incidental to accomplishing the former, undermining Defendant's argument.

Specifically, the March 11, 2020 Order of the Governor of Arizona noted that there were nine (9) diagnosed cases of COVID-19 and "that there will likely be additional cases diagnosed" and the Order was implemented in order to "prevent, respond to, and mitigate the and *the spread* of COVID-19."  FAC at Exhibit 2.  On March 19, 2020, the Governor of Arizona issued an Order stating that COVID-19 "continues to spread across the country and the state, posing an increasing threat to public health and having a devastating impact on the economy" and ordered the closure of all non "life sustaining businesses . . . to help *stop the spread of COVID-19*."  *See* FAC at Exhibit 3.

The Governor issued a stay-at-home Order on March 30, 2020, mandating that non-essential businesses cease in-person operations. Governor Ducey further ordered that "all individuals in the State of Arizona shall limit their time away from their place of residence or

property," except for certain, life-sustaining activities such as purchasing food. *See* FAC at Exhibit 4.

Defendant's contention that the civil authority provisions preclude coverage requires a tortured view of the facts here to attempt to align them with the cases Defendant relies on. Every single case Defendant relies on concerns civil authority orders that were entered to address speculative damage that *might* occur in the future. In this case, Plaintiff has alleged that the Orders were issued as the result of losses *already* occurring in the area adjacent to the Premises, and Defendant's line of authority is therefore distinguishable from the facts of this dispute and does not dictate granting Defendant's Motion to Dismiss. Defendant's cited cases do not support its argument.[13] Defendant relies on a litany of cases it claims supports the proposition that a policyholder must prove that actual property damage has occurred for coverage to attach.

In *Syufy Enterprises v. Home Ins. Co. of Indiana*, No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995), the plaintiff movie theater company was affected by a curfew put in place in response to protests and riots. The relevant provision in *Syufy* required "damage to or destruction of property adjacent to the premises," and the parties stipulated that "no property located within two blocks of any Syufy theater was physically damaged as a direct result of the riots." *Id.* at *1. That fact would clearly preclude coverage, and the court's opinion rested on an analysis of the ambiguous term "adjacent." *See id.* at *1-2. Plaintiff's Policy involves a one-mile area. Additionally, the provision in *Syufy* requires that "access to such described premises is *specifically* prohibited by order of civil authority." *Id.* at *1. No such specificity requirement exists

---

[13] Defendant cites summary judgment cases that should not be persuasive at the motion to dismiss stage. *See Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) (relating to a hurricane evacuation order); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 440 F. Supp. 3d 520 (D.S.C. 2020) (same); *but see Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, No. CIV.A.01-4679, 2002 WL 31247972, at *4 (E.D. Pa. Sept. 30, 2002) (finding civil authority coverage—involving a substantially similar provision to Plaintiff's Policy—following orders to close businesses due to a hurricane).

in Plaintiff's Policy.[14] In the present case, access to Plaintiff's business was prohibited by the civil authority Orders as a result of physical loss or damage within one mile of the insured property, as the Policy requires. In fact, Plaintiff's claims are more analogous to the scenario that the *Syufy* court exemplified. *See id.* at *3 n.1 ("[T]he following situation would clearly be covered: A building next door to a Syufy theater is damaged by fire; for safety reasons, the civil authorities issue an order closing the Syufy theater during repairs to the adjacent building. Any business loss suffered by Syufy for up to two weeks would be covered under the business interruption provision."); *see also S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1141 (10th Cir. 2004) (comparing cases like *Syufy* "where the civil authority order had only the indirect effect of restricting or hampering access to the business premises" with other cases in which "a civil authority required the insured's premises to close, thereby invoking coverage for business losses").

Further, the Second Circuit in *United Air Lines* held that civil authority coverage could not apply because the prohibition of access to Ronald Reagan National Airport was based solely on fear of *future* attacks.  439 F.3d 128, 134 (2d Cir. 2006).  *Dickie Brennan* concerned a claim for business interruption losses arising out of an evacuation order for New Orleans due to the threat of Hurricane Gustav, where the Fifth Circuit held that coverage did not attach because the damage in that case occurred *solely* in the Caribbean.  636 F.3d 683, 685 (5th Cir. 2011).

Here, the Orders were not issued in anticipation of damage that was speculative or feared to occur at some point in the future, but rather to address actual, ongoing damage inflicted in and around the location of the Premises.  Plaintiff has alleged facts to that effect.  Furthermore, the Orders mandating the closure of businesses in the Commonwealth clearly reference ongoing loss

---

[14] Regardless, access to Plaintiff's insured property was specifically prohibited by the civil authority Orders by, *inter alia*, defining "essential" versus "non-essential" businesses.

or damage caused by COVID-19.  The Pennsylvania Supreme Court in fact *confirmed* that the Order caused "a temporary loss of the use of the Petitioners' business premises." *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 889-90 (Pa. 2020) (the Orders were executed "to protect the lives and health of millions of Pennsylvania citizens").  To the extent Defendant disputes Plaintiff's well-pled allegation that the damage occurred in the area of Plaintiff's premises, that is a factual dispute more properly resolved through the discovery process.  Finally, the Orders absolutely prohibited access to the Premises; customers were prevented from entering and dining at the Plaintiff's restaurant.  *See infra.*  Taking Plaintiff's allegations as true for the purposes of the Motion to Dismiss, Plaintiff has clearly satisfied its burden under the law to state a claim for coverage under the Civil Authority provision of the Policy, and Defendant's Motion must be denied.

### C.      Plaintiff's Claims Are Not Excluded by the Policy

#### 1.      The Virus Exclusion Does Not Apply to Civil Authority Coverage

Defendant's argument that the virus exclusion precludes civil authority coverage misunderstands the plain language of the Policy and attempts to muddle an important distinction. The exclusion purports to exclude coverage for property damage arising out of the presence of any "fungi" or "microbes."  See Defendant's Exhibit A part 2 at 38.  However, Plaintiff's business income loss was caused by the civil authority Orders, *not* the coronavirus. There is no exclusion in the policy for civil authority orders that were entered due to a pandemic.

Further, the language of the exclusion shows that it does not apply to civil authority coverage, because the payout for civil authority coverage comes from business income loss or extra expense caused by the civil authority orders, not the property damage caused by the virus. When civil authority coverage is invoked, Defendant would pay for Plaintiff's business income loss or extra expense caused by the civil authority Orders, *not* the actual damage to surrounding

property caused by the virus which prompted the civil authority Orders. The exclusion therefore cannot be invoked by civil authority coverage.

The exclusion plainly contemplates the actual damage caused by a virus, not every event in a causal chain leading back to a virus. Defendant has not cited any case law holding that the tenuous connection between an excluded cause of loss prompting a civil authority order, the institution of a civil authority order, and business income loss or extra expense resulting from the civil authority order can preclude coverage.[15] To permit Defendant's unlimited view of causation would produce absurd results. *Century Sur. Co. v. Casino W., Inc.*, 677 F.3d 903, 909 (9th Cir. 2012) ("Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results.") (quoting *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992)). Simply, Plaintiff's business income loss and extra expense resulting from the civil authority Orders are not affected by the virus exclusion.

### a) Denying Coverage Under the Virus Exclusion Would Be Contrary to the Reasonable Expectations of the Parties

An insurance contract, like that obtained by the Plaintiff here, is an inherently adhesive instrument. The Pennsylvania Supreme Court definitively agrees:

> The traditional contractual approach fails to consider the true nature of the relationship between the insurer and its insureds. Only through the recognition that insurance contracts are not freely negotiated agreements entered into by parties of equal status; only by acknowledging that the conditions of an insurance contract are for the most part dictated by the insurance companies and that the insured cannot "bargain" over anything more than the monetary

---

[15] As discussed *supra*, Section IV.A, the plaintiff in *Gavrilides* conceded it had no property damage. Plaintiff has not conceded that point here. Further, the plaintiff did not argue that the virus exclusion was not applicable because of statements made by the ISO to regulators as to its proper scope. Thus, this Court should not consider *Gavrilides* dispositive at this stage.

> amount of coverage purchased, does our analysis approach the
> realities of an insurance transaction.

*Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978) (citation omitted); *see also*

*Mogck v. Unum Life Ins. Co. of Am.*, 292 F.3d 1025, 1028 (9th Cir. 2002) ("The insurance policy

at issue was drafted entirely by [the defendant] and is therefore a contract of adhesion."); *Smith*,

783 F. Supp. at 1227 ("[W]hen dealing with standardized agreements, the reasonable expectations

of the insured become[s] a guiding principle."); *Darner Motor Sales, Inc. v. Universal*

*Underwriters Ins. Co.*, 682 P.2d 388, 406 (Ariz. 1984) ("Where the 'boilerplate' conflicts with the

intent it will not be enforced. The agent must inform the customer if there is something in the

'boilerplate' that is contrary to the expressed intent of the parties or the purpose of the

transaction."); *Bishops, Inc. v. Penn Nat. Ins.*, 984 A.2d 982, 989 (Pa. Super. 2009) ("When

interpreting a policy of insurance, we employ an analysis which, while derived from the law of

contracts, recognizes that most insurance transactions are not freely bargained between equals but

are largely adhesive in nature.") (citation omitted).

Accordingly, this Court must resolve any contractual ambiguities in favor of the insured.

*See Sciolla v. W. Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013)

("Ambiguous insurance policy provisions are construed in favor of the insured to further the

contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy,

and controls coverage.") (citations and quotations omitted) (applying Pennsylvania law). Plaintiff

had no part in the drafting of any Policy language, so Plaintiff's reasonable interpretation of the

Policy should be favored, and Courts must strictly construe an exclusion against the insurer who

is trying to rely upon it. *Swarner v. Mut. Ben. Grp.*, 72 A.3d 641, 645 (Pa. Super. 2013)

("Exclusionary clauses generally are strictly construed against the insurer and in favor of the

insured.").

Defendant's offering of the Policy instilled a reasonable expectation in Plaintiff that it was paying Policy premiums for business income and extra expense coverage and that if its business was forced to shut down, the Policy would provide coverage. Defendant's denial of coverage is contrary to the reasonable expectations of the parties, and Defendant's attempt to exclude coverage under these circumstances should be disfavored.

Recently, the Middle District of Florida denied the defendant insurer's motion to dismiss finding that policy is ambiguous.  The court held:

> . . . it is not clear that the plain language of the policy unambiguously and necessarily excludes [p]laintiff's losses. The virus exclusion states that [the insurer] will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread, or any activity of "fungi, wet rot, dry rot, bacteria or virus." Denying coverage for losses stemming from COVID-19, however, does not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these kinds of business losses.

*Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company, Ltd*., No. 6:20-cv-01174, at 7 (M.D.Fla. Sept. 24, 2020), attached hereto as Exhibit 4. The Court also notes that none of the cases the defendant cited to "dealt with the unique circumstances of the effect COVID-19 has had on our society—a distinction this Court considers significant."  *Id*

The plain language of the Policy exclusions clearly contemplates scenarios involving temporary contamination of a property, such as with E. coli, salmonella, or "listeria bacteria in milk,"[16] which are relatively common. They do not contemplate a worldwide pandemic of a novel coronavirus that results in statewide shutdown orders. *Cf. MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1214 (Cal. 2003) (considering the absurd implications of permitting

---

[16] *See* ISO Circular LI-CF-2006-175, New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria, ISO (July 6, 2006), https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf.

anything which could possibly be considered an "irritant or contaminant" to preclude coverage pursuant to a pollution exclusion).

In fact, the ISO, when seeking approval for the "Exclusion of Loss Due to Virus or Bacteria," acknowledged that it was intended for losses and damage associated with "disease" and actual "contamination" of the insured property.[17] Other insurers have been much more specific in drafting and specifically using the "pandemic" language. *See, e.g.*, *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016) ("The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, pandemic, influenza, plague, SARS, or Avian Flu."). The Court should not reward the Defendant for failing to properly draft its exclusion nor permit it to expand the scope of its virus exclusion that does not address a pandemic.

Accordingly, the virus exclusion is not applicable to Plaintiff's claims.

> **b)** **Plaintiff's Regulatory Estoppel Argument Requires Further Discovery**

When submitting the boilerplate virus exclusion language for approval to state insurance departments, the ISO argued that the virus exclusion would merely *clarify* that damage caused by a virus was not covered by property policies. However, prior case law finding coverage for damage caused by viruses contradicts the ISO's statements. It is therefore not entirely understood why the ISO made those statements or what the scope of the exclusion was understood to be by insurance regulators.

---

[17] *See id.* ("In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.").

"[A]n industry that makes representations to a regulatory agency to win agency approval will not be heard to assert the opposite position when claims are made by litigants such as insured policyholders." *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir. 2010) (citation, quotations, and emphasis omitted). In *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189 (Pa. 2001), the Pennsylvania Supreme Court reversed the Superior Court's grant of preliminary objections and remanded for the trial court to apply the doctrine of regulatory estoppel. The Court based its decision on the following allegations from the plaintiffs' complaint:

> [I]n 1970 the insurance industry, including the defendant insurers, submitted to the Pennsylvania insurance department a memorandum which asserted that the disputed language—excluding coverage for pollution unless it was "sudden and accidental"—would not result in any significant decrease in coverage. The complaint alleged, moreover, that the insurance department relied on the industry's representation when it approved the disputed language for inclusion in standard comprehensive general liability policies without a reduction in premiums to balance a reduction in coverage.

*Id.* at 1192. The Court concluded: "[t]hus, having represented to the insurance department, a regulatory agency, that the new language in the 1970 policies—'sudden and accidental'—did not involve a significant decrease in coverage from the prior language, the insurance industry will not be heard to assert the opposite position when claims are made by the insured policyholders." *Id.* at 1192–93.[18] Discovery is necessary to explore the ISO's representations as to the scope of the virus exclusion. *See Hussey Copper, Ltd. v. Royal Ins. Co. of Am.*, 567 F. Supp. 2d 774, 787 (W.D. Pa. 2008) (permitting discovery regarding plaintiff's regulatory estoppel theory, focusing on what was said to state regulators in getting an insurance exclusion approved, before ruling on a motion for summary judgment); *Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*, 629 A.2d 831, 848 (N.J. 1993)

---

[18] *See also* Richard P. Lewis et al., *Here we go again: Virus exclusion for COVID-19 and insurers*, NU Property Casualty 360 (Apr. 7, 2020), https://www.propertycasualty360.com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/ (examining regulatory estoppel with regard to the COVID-19 pandemic and gathering cases).

(finding that statements made to regulators were relevant as to whether an exclusion applies to a policy). Likewise, the parties here require discovery to examine the scope and validity of the virus exclusion.

> **c)      The Parties Require Discovery to Ascertain the Scope and Validity of the Virus Exclusion**

The virus exclusion is ambiguous, raising questions as to its intended meaning, or even whether its approval was obtained using false or misleading statements. *See* Section IV.B.2, *supra*. Defendant is now arguing that the virus exclusion unequivocally excludes coverage for loss or damage even remotely related to a virus, when this was not the intended or understood scope.

"Policy provisions are ambiguous . . . when they are reasonably susceptible of different constructions and capable of being understood in more than one sense." *Swarner*, 72 A.3d at 645 (citation and quotations omitted). *Cf. In re Estate of Pouser*, 975 P.2d 704, 709 (Ariz. 1999) ("If the language of the will is reasonably susceptible to two interpretations, we may consider extrinsic evidence to ascertain the testator's intent."). "[This is also not a question] to be resolved in a vacuum. [Rather], contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

This Court should consider extrinsic evidence related to the scope and validity of the virus exclusion in order to make a fair and accurate determination of these issues. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993) ("[T]he judge first considers the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties.").

When determining whether a virus exclusion clause can properly exclude coverage for business income loss and extra expense that was the result of a civil authority order issues in response to the COVID-19 pandemic, the Court should consider statements made to regulators to determine whether the exclusion clause was properly intended to exclude losses such as Plaintiff's or losses related to a pandemic. The Court should also consider statements made to regulators to determine whether the insurers intended to exclude such coverage. Because the Policy uses the standardized form language that was created by the ISO, it is premature to consider whether the exclusion applies in this case. Further, Defendant should not be able to claim that the ISO's improper application for the virus exclusion does not estop Defendant from using it; Defendant, as the intended beneficiary of the ISO's application, should also be estopped from improperly taking advantage of the virus exclusion. Discovery must be considered to determine what was represented to insurance regulators as to the scope and meaning of the exclusion. *See* Section IV.C.3, *supra*; *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1195 (Pa. 2001) (considering statements made to the Pennsylvania insurance department to determine the scope of a pollution exclusion); *see also Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*, 629 A.2d 831, 848 (N.J. 1993) (finding that statements made to regulators were relevant as to whether an exclusion applies to a policy).

### D.      Issues Raised in Defendant's Motion Are Not Ripe

Ultimately, the issues raised in Defendant Motion to Dismiss are not ripe at this stage of the litigation. Material and complex factual issues—including whether there exists physical loss or damage, the mechanism by which the coronavirus and COVID-19 cause property damage and illness, the infectiousness and health risks of COVID-19, the expense that is necessary for remediation, and the validity, purpose, and scope of the Policy exclusions—have not yet been fully investigated. Without discovery into these issues, there can be no clear justification behind

Defendant's denial of coverage to Plaintiff. This Court should deny Defendant's Motion to Dismiss pending discovery, including expert discovery, on these and other relevant issues.

Plaintiff intends to support its allegations through evidence that its insured property and the surrounding area has experienced physical loss and property damage as a result of the coronavirus, COVID-19, and the Civil Authority Orders. Because of the nature of the coronavirus and COVID-19, expert testimony is necessary to demonstrate the property damage. This case is unlike other property damage cases where the damage is apparent to a lay witness. In fact, the damage is not visible to ordinary lay witnesses, which is what prompted the State of Arizona to order the shutdown of all businesses.

Expert testimony will demonstrate that Plaintiff's insured property and the surrounding area are, as alleged, damaged, how the damage occurred, and that the property will remain damaged until remediated. To demonstrate Plaintiff's property damage, Plaintiff intends to serve discovery on Defendant.

Not only is discovery necessary to demonstrate that Plaintiff's insured property was damaged, but also to determine whether the virus exclusion clause was properly included in the Policy. Plaintiff intends to serve discovery on the ISO regarding how the virus exclusion clause was drafted, correspondence with insurance regulators relating to the virus exclusion clause, and drafts of the virus exclusion clause. *See* Subpoena to Produce Documents directed to Insurance Services Office, *Bokman v. Sentinel Ins. Co. Ltd.*, No: 2:20-cv-02887 (E.D. Pa.), attached hereto as Exhibit 5. This discovery is necessary to determine whether the virus exclusion clause applies in this case and whether it was even applied to Plaintiff's Policy properly.

### E.   Declaratory Judgment Would Be Proper

Defendant also argues that, regardless of Plaintiff's entitlement to coverage under the Policy, declaratory judgment would not be proper. However, Declaratory judgment would be

proper to define Defendant's obligation to provide coverage for Plaintiff's losses under the Policy, and it is the norm in the insurance context. *See generally Studio 417*, No. 20-cv-03127 (denying motion to dismiss in declaratory judgment action); *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133-35 (3d Cir. 2000) (discussing insurance-related declaratory judgment actions). A judgment in Plaintiff's favor would resolve the present dispute by permitting Plaintiff to move forward with their insurance claims under the Policy. Defendant is incorrect that another action would be necessary to determine the level of coverage that Plaintiff is entitled to; if this Court declares that Plaintiff is entitled to coverage, Plaintiff intends to move forward with the usual claims process.

## V.     CONCLUSION

As set forth herein and in the accompanying documents, for the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

Dated: September 29, 2020

Respectfully submitted,

*/s/ Daniel C. Levin*
Arnold Levin, Esq.
Laurence S. Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177

Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

W. Daniel "Dee" Miles, III, Esq.
Rachel N. Boyd, Esq.
Paul W. Evans, Esq.
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel C. Levin, Esquire, certifies that on this date, the foregoing was filed and served via the Court's CM/ECF Filing System.


Date: <u>September 29, 2020</u>           <u>*/s/ Daniel C. Levin*</u>
                                         Daniel C. Levin, ESQUIRE