## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **i2i Optique LLC** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-3360** |
| | : | |
| **VALLEY FORGE INSURANCE** | : | |
| **COMPANY, d/b/a CNA** | : | |

_____

**McHUGH, J.**                                                                                      **JANUARY 27, 2021**

## MEMORANDUM

This is another in a series of cases pertaining to what, if any, insurance coverage exists to

protect businesses from income losses and expenses sustained during state-ordered shutdowns

resulting from the COVID-19 pandemic.  Plaintiff here, an Arizona business, seeks a declaration

that coverage exists under its policy with a Pennsylvania insurer.  No other claim is before the

court.  The parties agree that Arizona law controls, but no Arizona court has ever construed the

controlling language here in any relevant context, let alone in the context of the current

pandemic.  Rather than decide this case based on general insurance principles from other

jurisdictions, the most prudent course is to exercise my discretion under the Declaratory

Judgment Act to decline jurisdiction and dismiss the case without prejudice.

### I.      Factual Background

Plaintiff, i2i Optique LLC, is an Arizona company that operates, manages, and

owns an optical goods store in Scottsdale, Arizona. Compl. ¶ 9, ECF 1.  Defendant, Valley Forge

Insurance Company d/b/a CNA, a Pennsylvania corporation whose principal place of business is

Pennsylvania, issued an insurance policy ("the Policy") to Plaintiff for the period of August 31,

2019 to August 31, 2020. Compl. ¶¶ 10-11. Plaintiff's optical goods store is covered under the

Policy. Compl. ¶ 13.

1

In mid-March 2020, Plaintiff's store shut down to customers as a result of a string of executive orders issued by Arizona Governor Doug Ducey, which declared a Public Health Emergency in response to the COVID-19 pandemic, limited the operation of certain businesses, and mandated that non-essential businesses cease in-person operations. Compl. ¶¶ 2, 50-52, 59. As a result of these Orders, Plaintiff has incurred substantial loss of business income and additional expenses. Compl. ¶ 72.  Plaintiff alleges such losses are covered under its "all-risk" Policy. Compl. ¶¶  17, 72.

The Policy covers "loss of Business Income" when sustained under the following circumstances: (1) "due to the necessary 'suspension' of 'operations' during the "period of restoration'" ("Business Income Coverage" provision); and (2) due to action of a civil authority ("Civil Authority" provision).[1] Def's Mot. Dismiss, Ex. A, at 36, 62, ECF 9. The applicability of both provisions depends upon  a single triggering event: the losses and/or extra expenses must be caused by "direct physical loss of or damage to property."  *Id.*

Based on its reading of these provisions, Plaintiff contacted its insurance agent to make a claim under the Policy but was informed that the Defendant would reject the claim. Compl. ¶ 39. Thereafter, Plaintiff brought this action, seeking a declaration "that the Orders trigger coverage under this Policy" and a declaration "that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property." Compl. ¶ 76.

---

[1] At oral argument on January 12, 2021, the parties agreed that I may take judicial notice of the Policy under Federal Rule of Civil Procedure 201.

In their briefs and at oral argument, both parties agreed that Arizona law governs this matter. *See* Def.'s Mot. to Dismiss 9-10 n.2; Pl.'s Resp. 7 n.3, ECF 11.[2]

## II.    Governing Legal Standard

Plaintiff's sole claim arises under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a); Compl. ¶ 76.  The Declaratory Judgment Act provides that district courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id.* (emphasis added).  Given the statute's explicit "textual commitment to discretion," "[t]he Supreme Court has long held that this confers discretionary . . .  jurisdiction upon federal courts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134, 139 (3d Cir. 2014) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995) and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).  District courts therefore "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton,* 515 U.S. at 282.  As part of that discretion, "Congress has afforded the federal courts a freedom not present in ordinary diversity suits to consider the state interest in having the state courts determine questions of state law." *State Auto Ins. Companies v. Summy*,

---

[2] I agree that Arizona law would govern this matter if I chose to exercise jurisdiction. Where the parties are diverse, the district court must apply the choice of law rules of the state in which it sits with regard to the substantive law at issue—in this case, the law of insurance contracts. See *Huber v. Taylor*, 469 F.3d 67, 73 (3d Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). This Court sits in Pennsylvania. Pennsylvania conflict of laws principles dictate that an insurance contract is guided by the law of the state in which it was made. *Crawford v. Manhattan Life Ins. Co.*, 221 A.2d 877, 880 (Pa. Super. Ct. 1966); *see also Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 162 (3d Cir. 2011).  The place of making an insurance contract is the place of delivery. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co*., 193 F.3d 742, 745-46 (3d Cir. 1999). In the absence of proof as to the place of delivery, there is a presumption of delivery at the residence of the insured. *Crawford,* 221 A.2d at 881 (citation omitted).  Here, Plaintiff was domiciled in Arizona when the policy was issued. *See* Compl. ¶ 9. ("Plaintiff is owned by Sabrina Krasnov and Joseph Krasnov, citizens of Arizona"); *see Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (Limited liability companies are citizens of the states in which its members are citizens).

234 F.3d 131, 135 (3d Cir. 2000), *as amended* (Jan. 30, 2001) (citing *Mitcheson v. Harris*, 955

F.2d 235, 238 (4th Cir. 1992)).

Courts may decline jurisdiction *sua sponte* under the Declaratory Judgment Act. *See*

*Reifer,* 751 F.3d at 148 (affirming district court's *sua sponte* determination to decline jurisdiction

for claim arising under the Declaratory Judgment Act given the nature of the state law issues

raised); *see also V&S Elmwood Lanes, Inc. v. Everest Nat'l Ins. Co.*, No. CV 20-3444, 2021 WL

84066, at *3-4 (E.D. Pa. Jan. 11, 2021) (DuBois, J.) (declining jurisdiction under the Declaratory

Judgment Act for COVID-related insurance claims *sua sponte* due to the public interest in

resolution of novel state law issues and the existence of pending litigation in state courts).

## III.    Discussion

A threshold question is whether there are "parallel state proceedings" between the parties

in this matter, and here there are not.[3] *See Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282

(3d Cir. 2017). The absence of  parallel state proceedings is a significant factor weighing in favor

of exercising jurisdiction. *Id.*  When there are none, a district court must consider whether the

lack of parallel state proceedings is outweighed by other non-exhaustive factors outlined in

*Reifer* and *Summy. Id*. at 282-83; *Reifer*, 751 F.3d at 144, 146-47.  "[S]ome factors may be

weighed heavier than others based on the circumstances of each case." *Mattdogg, Inc. v.*

*Philadelphia Indem. Ins. Co.*, No. CV206889FLWLHG, 2020 WL 6111038, at *4 (D.N.J. Oct.

16, 2020) (citing *Reifer*, 751 F.3d at 146).  For example, the "nature of the state law issue raised"

may itself be sufficient to decline jurisdiction. *Reifer*, 751 F.3d at 148  ("We conclude that

---

[3] "The Supreme Court has described a 'parallel' proceeding as 'another proceeding ... pending in a state court in which all the matters in controversy between the parties could be fully adjudicated.'" *Reifer*, 751 F.3d at 137 (citing *Brillhart,* 316 U.S. at 495). More recently, in *Kelly*, the Third Circuit instructed that "there must be a substantial similarity in issues and parties between contemporaneously pending proceedings" to make those proceedings parallel. 868 F.3d at 284.

declining jurisdiction was proper because the lack of pending parallel state proceedings was

outweighed by another relevant consideration, namely, the nature of the state law issue raised").

>A.  The *Reifer* and *Summy* factors

In *Reifer*, the Third Circuit explained that "a district court should guide its exercise of

sound and reasoned discretion by giving meaningful consideration to the following factors to the

extent they are relevant":

>(1) the likelihood that a federal court declaration will resolve the uncertainty of
>   obligation which gave rise to the controversy;
>
>(2) the convenience of the parties;
>
>(3) the public interest in settlement of the uncertainty of obligation;
>
>(4) the availability and relative convenience of other remedies;
>
>(5) a general policy of restraint when the same issues are pending in a state court;
>
>(6) avoidance of duplicative litigation;
>
>(7) prevention of the use of the declaratory action as a method of procedural fencing or as
>   a means to provide another forum in a race for *res judicata*; and
>
>(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to
>   defend in a state court and its attempt to characterize that suit in federal court as falling
>   within the scope of a policy exclusion.

751 F.3d at 146.  In *Reifer*, The Third Circuit reiterated the caution it had previously expressed

in *Summy*:

>[W]hen applicable state law is 'uncertain or undetermined, district courts should be
>particularly reluctant' to exercise DJA jurisdiction . . .  Rather, the proper relationship
>between federal and state courts requires district courts to 'step back' and permit state
>courts to resolve unsettled state law matters.

*Id.* at 141 (citing *Summy*, 234 F.3d at 135-36).  Moreover, "the state's interest in resolving its

own law must not be given short shrift simply because [parties] perceive some advantage in the

federal forum." *Id.* (citing *Summy*, 234 F.3d at 136).

B.   Unsettled Arizona law relating to insurance coverage for COVID-19-related losses weighs against exercising jurisdiction.

Plaintiff contends that "'incorporeal' damage . . . trigger[s] property damage and civil authority coverage" under the provisions of the Policy. Pl.'s Resp. 11.  It further argues that "physical loss does not require structural damage," but rather, the "inability to use the business is sufficient." Pl.'s Resp. 12.  Meanwhile, in support of its motion to dismiss, Defendant argues that "courts around the country have roundly rejected such 'loss of use' claims due to government health orders in response to the pandemic." Def.'s Mot. Dismiss 2.  Yet there is no controlling state court precedent in Arizona.  That is true both with respect to the proper construction of the contractual terms generally, and their applicability to cover losses resulting from the COVID-19 related shutdowns. In ruling, I could only predict what Arizona courts might do, bringing this case squarely within the heart of *Reifer*:  "The fact that district courts are limited to predicting— rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" 751 F.3d at 148 (citing *Summy* at 135).

Given this lack of precedential authority, the parties have submitted extensive case law from other jurisdictions, including a number of courts in the Eastern District of Pennsylvania, which have resolved similar insurance coverage issues involving similar policy provisions during the COVID-19 pandemic. *See, e.g.*, *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. CV 20-3198, 2020 WL 6545893 at *5 (E.D. Pa. Nov. 6, 2020) (Slomly, J.).  However, comparatively few of these cases have solely involved claims for declaratory relief.  Typically, breach of contract claims were also raised, requiring a broader assertion of jurisdiction. *See Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017) ("[w]hen a complaint contains claims for both legal and declaratory relief, a district court must determine whether the legal claims are

independent of the declaratory claims; if so, the court has a 'virtually unflagging obligation' to hear those claims") (internal citations omitted).[4]

In contrast, when plaintiffs' insurance law claims have arisen solely under the Declaratory Judgment Act, numerous district courts, stressing the public import of such decisions during the COVID-19 pandemic, have followed the guidance of *Reifer* and *Summy* to "permit state courts to resolve unsettled state law matters," and declined jurisdiction.[5]  *Reifer*, 751 F.3d at 141 (citing *Summy*, 234 F.3d at 136); *see Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, No. CV 20-2561, 2020 WL 4735498, at *5-6 (E.D. Pa. Aug. 14, 2020) (Jones, J.); *Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*, No. 2:20-CV-1066, 2020 WL 5651598, at *5 (W.D. Pa. Sept. 23, 2020); *Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, No. CV 20-787, 2020 WL 5051459, at *4 (W.D. Pa. Aug. 27, 2020); *Mattdogg, Inc. v. Philadelphia Indem. Ins. Co.*, No. CV206889FLWLHG, 2020 WL 6111038, at *6 (D.N.J. Oct. 16, 2020); *V&S Elmwood Lanes*, 2021 WL 84066, at *4 (DuBois, J.).

I am persuaded that the absence of a settled body of case law in Arizona weighs heavily in favor of declining jurisdiction.[6]  On a general level, neither party has presented this court with controlling Arizona case law construing the controlling language of the policy, such as "physical

---

[4] As stated above, the Plaintiff here solely seeks declaratory relief, and therefore the "independent claim" test set forth in *Rarick* is not relevant here. 852 F.3d at 229.

[5] I am aware of five cases in this district in which the court exercised jurisdiction under the Declaratory Judgment Act in the absence of any other claim for relief.  *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. 20-1869, 2020 WL 7395153, at *10 (E.D. Pa. Dec. 17, 2020) (Savage, J.); *Humans & Res., LLC v. Firstline Nat'l Ins. Co.*, No. 20-CV-2152, 2021 WL 75775, at *10 (E.D. Pa. Jan. 8, 2021) (Joyner, J.); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, No. CV 20-4238, 2021 WL 131282, at *8 (E.D. Pa. Jan. 14, 2021) (Kenney, J.); *Adrian Moody & Robin Jones d/b/a Moody Jones Gallery v. The Hartford Financial Group, Inc. et al.*, No. CV 20-2856, 2021 WL 135897, at *11 (E.D. Pa. Jan. 14. 2021) (Kenney, J.); *Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, 2021 U.S. Dist. LEXIS 7256, No. 20-2365, at *23 (E.D. Pa. Jan. 14, 2021) (Kenney, J.). Significantly, however, all these cases were decided under Pennsylvania law.

[6] The Court of Appeals instructs district courts to "squarely address" the novelty of the state law claims at issue. *Reifer*, 751 F.3d at 149.

loss," which is critical to the outcome here.[7]  In that regard, no Arizona court has addressed

Plaintiff's contention that "loss of use" is encompassed within the controlling provisions.  At a

more granular level, the parties have provided no Arizona precedent dealing with insurance

coverage for COVID-19 related losses,[8] as these issues were working their way through the

Arizona courts.  Significantly, the Arizona Supreme Court has held that "[i]f a clause appears

ambiguous, we interpret it by looking to legislative goals, social policy, and the transaction as a

whole." *First American Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397 (Az.

2008). The parties were asked to address that standard in supplemental briefing, but upon review,

the parties' submissions simply underscored why the issue is more properly decided by Arizona

courts.

As stated recently by one district court, "[g]eneral principles of insurance contract

interpretation . . . may provide tools for the Court to address insurance disputes; however, those

tools, as applied to the scenario presently before the Court, are of limited utility in light of the

---

[7] Defendant relies on a federal district court case arising out of a forest fire. *White Mountain Communities Hosp. Inc. v. Hartford Cas. Ins. Co.*, No. 3:13-CV-8194 JWS, 2015 WL 1755372, at *2-3 (D. Ariz. Apr. 17, 2015).  The insured's property was damaged by smoke, and income losses were covered by the carrier for a period but then stopped. *Id.*  In holding that the carrier acted properly in ceasing such payment, the court made a broad statement about its understanding of the scope and purpose of Business Income Loss Coverage. *Id.*  In doing so, however, *White Mountain* did not cite any Arizona precedent, and is therefore weak authority for present purposes.  *See generally, id.*

[8] The Plaintiff provided a Magistrate Judge's Report and Recommendations in a federal Arizona district court as supplementary authority for its position. *See* ECF 24; *Cibus LLC v. Eagle West Ins. Co.*, No. CV-20-00277-TUC-JGZ (DTF), slip op. (D. Ariz. Jan. 21, 2021) (report and recommendation). But aside from the fact that the relevant language constitutes *dicta,* the Report cites no Arizona law. *Id.* at 9-11.

Other federal district court cases applying Arizona law to COVID-related insurance claims have ruled based upon provisions not at issue here. *See London Bridge Resort LLC v. Illinois Union Ins. Co. Inc.*, No. CV-20-08109-PCT-GMS, 2020 WL 7123024, at *1 (D. Ariz. Dec. 4, 2020) (analyzing whether COVID-19 falls within the policy definition of "pollution condition");  *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, No. CV-20-00785-PHX-JJT, 2020 WL 6827742, at *2 (D. Ariz. Nov. 20, 2020) (analyzing whether COVID-19 falls within policy's explicit virus exclusion).

recency of the COVID-19 pandemic and its intersection with insurance coverage issues governed

by . . . state law." *Venezie Sporting Goods*, 2020 WL 5651598, at \*4.

In sum, the consideration of this important factor weighs significantly against the

exercise of jurisdiction.

C. *Reifer* Factor Three: The public interest in the resolution of the issues weighs against exercising jurisdiction.

I must also consider "the public interest in settlement of the uncertainty of obligation."

*Reifer*, 751 F.3d at 146. As stated by another district court, this case "does not involve a run-of-

the-mill insurance coverage dispute. Rather, this dispute emanates from a once-in-a-lifetime

pandemic" with "implications of important state public policy." *Mattdogg*, 2020 WL 6111038, at

\*5. The Arizona public has a strong interest in seeing a resolution to the uncertainty of insurers'

obligations regarding coverage for COVID-19 losses under these and similar provisions.

"Whether . . . certain language in insurance policies creates coverage . . . will impact a

significant portion of the population operating businesses of all kinds." *Greg Prosmushkin*, 2020

WL 4735498, at \*5 (E.D. Pa. Aug. 14, 2020).

Importantly, the interpretation of the Policy will require an inquiry into Arizona

legislative goals and public policy, for which Arizona courts are better equipped. *See First*

*American Title Ins. Co.*, 218 Ariz. At 397 (outlining a three-pronged legal test for analyzing

ambiguous insurance contracts under Arizona law, which includes looking to legislative goals,

social policy, and the transaction as a whole). Undeniably, it was the state of Arizona that issued

the shutdown order resulting in Plaintiff's losses. Compl. ¶ 36; *see Mattdogg,* 2020 WL

6111038, at \*5 ("the public interest in resolving the uncertainty of obligation is best served by . .

. allow[ing] the New Jersey courts the opportunity to determine the impact of Governor

Murphy's Orders on insurance coverage"); *see also Summy*, 234 F.3d at 136 ("The desire of

insurance companies and their insureds to receive declarations in federal court on matters of

purely state law has no special call on the federal forum.").

        In addition to the fact that Arizona courts are better equipped to address the legal issues

which implicate these important public policy considerations, it also clear that they are better

positioned to do so, given that "a federal district court's predictive decision . . . will have no

binding effect on [state] courts." *Ewart v. State Farm Mut. Auto. Ins. Co.*, 257 F. Supp. 3d 722,

725 (E.D. Pa. 2017) (alteration in original).  That is one reason why "[i]t is counterproductive for

a district court to entertain jurisdiction over a declaratory judgment action that implicates

unsettled questions of state law" and why "[s]uch matters should proceed in normal fashion

through the state court system." *Summy*, 234 F.3d at 135.  Regardless of whatever ruling I might

make as to insurance coverage between these two parties, as a general matter insurance coverage

for COVID-19 related losses will remain unsettled until Arizona state courts resolve it.

        D.  *Reifer* <u>Factors Five and Six: The existence of pending litigation in Arizona state</u>
<u>courts, as well as the potential for duplicative litigation, weigh in favor of declining</u>
<u>jurisdiction.</u>

        *Reifer* also instructs that district courts should adhere to "a general policy of restraint

when the same issues are pending in a state court" and "avoid[] duplicative litigation." 751 F.3d

at 146 (alteration in original).  Given the unique circumstances of this "once-in-a-lifetime"

COVID-19 pandemic discussed above, the aforementioned *Summy* and *Reifer* factors are

sufficient on their own to decline jurisdiction. *See, e.g.*, *Greg Prosmushkin*, 2020 WL 4735498,

at \*5-6.  However, my decision is further buttressed by the fifth and sixth factors of the *Reifer*

analysis.

        There are a number of cases pending in Arizona state courts where the same issues—

based on "standardized language" found in insurance contracts—are in play. Compl. ¶¶ 22, 24;

*see, e.g., KLOS Enterprises LLC v. the Cincinnati Ins. Co. et al.*, CV 2020-010496 (Ariz. Super. 2020) (seeking coverage per "all-risk" insurance policy for losses relating to COVID-19 pandemic under Business Income provisions and Civil Authority provisions); *ABT Performance Arts Assoc. Inc.* v. *the Cincinnati Ins. Co. et al.*, CV 2020-010495 (Ariz. Super. 2020) (same). Both cases cited above involve the interpretation of insurance contracts where coverage is triggered by "accidental physical loss or accidental damage to" property and, as is exactly the case here, the "suspension of operations" during a "period of restoration."[9]

The pendency of those cases highlights another risk in proceeding with this case. "Were this Court to step in and exercise jurisdiction over this matter, it could potentially issue a decision inconsistent with that of the state courts. Such an outcome would upend uniformity at a time when businesses need clarity and consistency in law." *Mattdogg*, 2020 WL 6111038, at *5.[10] *See Venezie*, 2020 WL 5651598, at *5; *Dianoia's Eatery*, 2020 WL 5051459, at *3-4; *V&S Elmwood Lanes,* WL 84066, at *4.

    E.  Remaining *Reifer* Factors

---

[9] I may take judicial notice of these pending cases under Fed. Rule of Civil Proc. 201(b)(2).

[10] The Third Circuit has strongly indicated that the fifth *Reifer* factor is separate and distinct from the question of "parallel state proceedings" discussed as a preliminary factor *supra*. Again, a "parallel state proceeding" is a matter "*involving the same parties* and presenting [the] opportunity for ventilation of the same state law issues," *Kelly*, 868 F.3d at 284 (emphasis added), whereas the fifth *Reifer* factor is a broader inquiry that focuses on whether "the same *issues* are pending in state court." *Reifer*, 751 F.3d at 146 (emphasis added).  That is why "[c]ourts should first determine whether there is a 'parallel state proceeding' . . . [and] then weigh other factors"—namely, the *Reifer* factors. *Kelly*, 868 F.3d at 282-83.  And such is why the analysis of the fifth *Reifer* factor in *Kelly* focused primarily on the lack of identity of the issues between the state action, which sought "to determine a defendant's liability for an alleged harm," and the federal action, which sought "only a declaratory judgment on an insurer's obligation to defend and indemnify the defendant." 868 F.3d at 279.  I note that the danger of "upending" uniformity existing in the instant case, which involves "standardized" insurance provisions subject to pending state law litigation, was not present in the federal court proceeding in *Kelly*, and that *Kelly* did not involve an "unsettled question of state law or important policy" considerations. Compl. ¶¶ 22, 24; *Mattdogg*, 2020 WL 6111038, at *5; *Kelly*, 868 F.3d at 288.

Among the remaining *Reifer* factors, I find that some do not point significantly in one direction or another, and others are irrelevant. Therefore, they do not impact my conclusion that the aforementioned *Summy* and *Reifer* factors counsel strongly towards declining jurisdiction.

Regarding factors one, two, and four, although there is a strong likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the present controversy between these parties, it will not inconvenience the parties to litigate this case in Arizona. That venue is readily available to the Arizona-based Plaintiff, and issuance of the policy in dispute in this case demonstrates that Defendant conducts business there. *Williams v. Lakeview Co.*, 13 P.3d 280, 282 (2000) ("Arizona's long-arm rule confers jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause"). Moreover, the parties have been involved in the instant litigation for only six months.[11] And finally, it is clear that the declaratory relief sought by Plaintiff is available in Arizona courts.

Regarding factors seven and eight, I find that they are irrelevant here, and therefore need not consider them. *See Reifer*, 751 F.3d at 146 (district courts should consider the eight factors only "to the extent that they are relevant").

IV.     **Conclusion**

In the final analysis, the importance of the issues, the complete absence of relevant Arizona law, and the pendency of cases there that will provide definitive guidance weigh heavily against assumption of jurisdiction, where all this Court could do is predict what Arizona law might prove to be. I therefore join the numerous district courts in this circuit that have found it most appropriate to "step back" and allow state courts to decide these critical issues. *Reifer*, 751

---

[11] In *Reifer*, the Third Circuit, although affirming the district court's *sua sponte* determination not to retain jurisdiction after twelve months of litigation, instructed district courts to do so in a timely fashion. 751 F.3d 149 n.25. This matter has been addressed in less than four months after the case was re-assigned, and less than a month after the final submission of the parties.

13

F.3d at 141 (quoting *Summy*, 234 F.3d at 136); *see Venezie*, 2020 WL 5651598, at *5; *Dianoia's*

*Eatery*, 2020 WL 5051459, at *4; *V&S Elmwood Lanes,* WL 84066, at *4; *Mattdogg*, 2020 WL

6111038, at *6; *Greg Prosmushkin*, 2020 WL 4735498, at *5-6.

An appropriate order follows.


   /s/ Gerald Austin McHugh
United States District Judge